## Case No. 12,364.

SARGENT et al. v. LARNED et al.

[2 Curt. 340.] [1]

Circuit Court, D. Massachusetts. May Term, 1855.

PATENTS — COMPROMISE — AGREEMENT NOT TO INFRINGE—CHANGE OF FORM—INJUNCTION—PLEADING—SUFFICIENCY OF ANSWER.

1. If a defendant, for a valuable consideration, covenants not further to infringe an existing patent, he will be enjoined by a court of equity from further infringing, unless he shows some equitable reason why he should not be bound by his covenant.

[Cited in Morse v. Davis, Case No. 9,855; Brooks v. Moorhouse, Id. 1,956.]

2. Where a bill alleged that an agreement of compromise was made, and the answer goes into a history of the dispute compromised, it is not responsive to the bill.

3. An agreement of compromise fairly made, must be executed, without regard to the merits of the dispute compromised.

4. A change of form merely, or of mechanical structure, which produces no new, or materially improved result, is not the subject of a patent, and is an infringement of a patent.

[Cited in Sargent v. Seagrave, Case No. 12,-365; Pearl v. Ocean Mills, Id. 10,876; Mann's Boudoir Car Co. v. Monarch Parlor Sleeping Car Co., 34 Fed. 134; P. P. Mast & Co. v. Rude Bros. Manuf'g Co., 3 C. C. A. 477, 53 Fed. 124; Mudgett v. Thomas, 55 Fed. 647; Beach v. American Box-Mach. Co., 63 Fed. 606.]

[This was a bill in equity by James Sargent and others against Pitts A. Larned and others for the infringement of letters patent No. 10,-078 granted to James Sargent and D. P. Foster, as assignees of Ephraim L. Pratt, October 3, 1853.]

Geo. T. Curtis and C. Devens, for complainants.

Whiting & Russell, contra.

CURTIS, Circuit Justice. This is a suit in equity, founded on letters patent for "a new and useful improvement in machines for paring apples," granted to the complainants as the assignees of Ephraim L. Pratt, and bearing date October 4, 1853. The counsel for the complainants insisted, that the respondent Seagrave is estopped by his covenant, which will

1 [Reported by Hon. B. R. Curtis, Circuit Justice.]

hereafter be referred to, from disputing the validity of the patent; but the question to which most of the evidence, and the arguments of the counsel at the hearing, were directed, was whether Pratt was the original and first inventor of the thing patented, and so whether the letters patent were valid. I am of opinion, that upon the pleadings and evidence in this case, this question is not open.

The bill, after stating the grant of the patent, alleges that in May, 1854, the defendant Seagrave being engaged in the manufacture of machines in violation of the patent, for certain valuable considerations entered into a covenant with the complainants, that he would desist from the construction of the same, and would wholly abstain from the violation of the aforesaid exclusive rights of the complainants. That the instrument containing this covenant was executed in duplicate by the parties, and each party had one part thereof; that the part belonging to the complainants has been lost or destroyed by accident, and they have applied to the defendant Seagrave, through their solicitor, to be permitted to inspect the part in his possession; but liberty was refused, and the complainants cannot state the contents of the instrument with precision, but pray that the defendants may discover a copy thereof.

The defendants produce and annex a copy of the instrument, which is as follows: "Know all men by these presents, that we, Sargent & Foster, of Shelburne, and John D. Seagrave, of Worcester, for divers good and valuable considerations, passing from each party to the other, and of the covenants herein made from each to the other, do make the following agreement: The said Seagrave hereby agrees to relinquish all right or claim hereafter to make any apple paring machines, by virtue of the contract of the date of September 6, A. D. 1853, signed by said Sargent & Foster, and covenants to make no more of said machines after this date. The said Sargent & Foster agree to take of said Seagrave certain castings, now in the possession of said Seagrave (which have been already packed up), and pay him therefor the sum of $117. It is further agreed hereby, that said Seagrave may be entitled to sell the machines which he now has actually completed, which are understood to be in number about 1,500 in the city of Worcester, and from five to seven hundred in addition in other places; provided, however, that Seagrave shall sell said machines at the market prices of said Sargent & Foster; and provided, also, that said Seagrave shall sell said machines, within eight months from the date hereof, and after the expiration of said time, shall have no right to sell the machines aforesaid, except as hereafter agreed. At the expiration of said eight months, it shall be at the option of the said Sargent & Foster to allow said Seagrave eight months in addition, to dispose of said machines, or they shall be entitled to take the balance of said machines, at the appraisal of three disinterested men, one to be chosen by each party, and those so chosen shall select a third; and if said Sargent & Foster shall elect to take said machines, they shall pay therefor, on the terms appointed by said appraisers; and if they elect to allow said Seagrave eight months, in addition to the first eight months, then the said Seagrave shall be entitled to sell said machines, which are now constructed, during said second eight months, but at no time thereafter. In witness whereof we have hereunto set our hands and seals, this 26th day of May, A. D. 1854. Sargent & Foster. (Seal.) J. D. Seagrave. (Seal.) Witness: Charles Devens, Jr."

A copy of the contract of September 6, 1852, referred to in this instrument, is also produced and is as follows: "Know all men, that whereas John D. Seagrave, of Worcester, formerly of Milford, in the county of Worcester and commonwealth of Massachusetts, is, and has been engaged in the manufacture of certain paring machines, which include in their construction a certain alleged improvement for which E. L. Pratt has made an application for a patent, of which we are assignees, now, for value received, we, Sargent & Foster, of Shelburne, in the county of Franklin and commonwealth aforesaid, hereby agree that said Seagrave shall have the privilege to finish, complete, and sell all machines actually commenced by him, (the number to be determined by the number of castings now on hand or completed for said Seagrave at this date,) without objection, claim, or hinderance by us, our heirs, executors, administrators, or assigns, against him the said Seagrave or any one claiming by or under him. It being understood and agreed on the part of said Seagrave, that said machines are to be sold as nearly as possible at the market price of said Sargent & Foster; that is, he is to be governed in his sales to the wholesale and retail trade, by the prices of the Sargent & Foster machines. In witness whereof, the said Sargent & Foster have hereunto subscribed our names, this 6th day of September, A. D. 1853. Sargent & Foster."

Taking the two instruments together, it appears that on the 6th of September, 1853, Seagrave received from the complainants, a qualified license to complete and sell certain machines, including the improvement for which these letters patent issued; and that in May following, this license was relinquished, and another and different license to sell certain of the said machines, was substituted; and Seagrave expressly "covenanted to make no more of said machines after this date." If this was a valid contract, a court of equity will not allow Seagrave to violate his covenant, and defend himself by attacking the validity of the patent. He must keep his covenant to desist from the manufacture, unless he shows some equitable reason why its performance should not be decreed. It is open to the defendants to allege and prove any facts, which render

a specific performance of the covenant inequitable, and great latitude is allowed to the covenantor who resists performance. The defendants have stated in their answer, some circumstances which are relied on by their counsel, as furnishing equitable reasons for preventing the interposition of the court. That part of the answer which relates to this subject, is as follows:

"Said Seagrave's machine was completed and put in use, about nine or ten months, before the date when the said Sargent & Foster's or Pratt's patent was issued. And said Seagrave had no belief, that any patent would or could be granted to said Pratt, for anything contained in his said machine, and went on to manufacture his machines in good faith, and believing that no one except Mr. Carter could have any claim upon him for so doing. Said Seagrave had procured certain castings, and the malleable ironwork, for about five or six hundred of these machines, and had completed a few, whereupon one of the complainants, Mr. Foster, informed him that Pratt had applied for a patent for the mode of uniting the knifeholder to the rod. Thereupon the said Seagrave replied, that said Pratt had no right to a patent for that thing. And said Seagrave told said Foster that if he should finally succeed in obtaining a patent, which should be valid in law, for that particular mode of uniting the knife-stock to the rod, and if he should continue to use it, he would make him a fair allowance therefor. But no definite arrangement was at that time effected between the parties. Meantime said Seagrave had received several orders for machines of a description similar to those of Sargent & Foster; the form of these machines being such, that they could be built slightly cheaper, than the improved machine of said Seagrave; whereupon said Seagrave, believing then, as he now believes, that he had a perfect right to build said machines, went on to make them to supply these orders, leaving the castings of his own improved machines unfinished in his shop, to be used, whenever this improved machine should be called for. While affairs were in this situation, neither Pratt's nor Seagrave's patent having been granted; an interference was declared by the patent office, between the claims of the respective applicants. Upon this interference the said Sargent & Foster and Seagrave met together, and made an arrangement, set forth and embodied in contract or paper dated September 6, 1853, in part, and in part verbal; said paper is hereunto annexed, and marked 'A.' By said arrangement and agreement, it was mutually agreed, that said Seagrave should withdraw all opposition to said Pratt's claim for his peculiar mode of uniting the knife-stock to the end of the rod, and should petition the patent-office to grant the said claim, which said Seagrave accordingly did, and the patent to said Pratt issued immediately

after. On the other hand, the paper marked 'A,' dated September 6, 1853, was executed and delivered, giving the said Seagrave the right to use said alleged improvements upon as many machines as he had castings for. And for the consideration of said Seagrave withdrawing his opposition, as aforesaid, it was further agreed, that if he should receive a patent for his improvements, that said Sargent & Foster and Seagrave might use each other's improvements. And if a patent should not be granted, he should have a right to use said Pratt's improvement, paying to Sargent & Foster, a part of their expense in getting out the patent. Upon these terms the arrangement of September was made, and the reason assigned by said Sargent, for not putting this arrangement in writing at the time, was because, he said that such a contract, if in writing, might endanger the safety of the patent. All three of us took legal advice at Worcester, and were so advised by our counsel. And said Seagrave and the complainants, believing the advice to be correct, did not have the agreement reduced to writing, the respondents trusting to the honor of the complainants, but they received the paper dated September 6, 1853, at the time, and agreed to wait for the remaining writings until the issue of the patent. After this arrangement, said Seagrave went on making these machines. Soon after, as said Seagrave believes, said Sargent & Foster received the patent of Pratt, and said Seagrave applied to the complainants, to have the verbal agreement above stated reduced to writing. They refused to do it, and said Seagrave went on to finish up said machines, according to said paper A. While at work on these machines, said Seagrave's patent was issued, dated April 18, 1854. A short time after this, and before said Seagrave had completed the machines mentioned in said paper marked 'A,' said complainants commenced a suit against said Seagrave, for an alleged violation of said Pratt's patent. Upon investigating the facts, said complainants being satisfied that they had commenced the action wrongfully, and had attached the property of said Seagrave without cause, withdrew the action and paid their costs. The complainants then offered to buy out said Seagrave's patent, and all his stock in trade, but the parties could not agree upon the price. Failing to make a bargain, and the complainants refusing to carry out their verbal arrangement with said Seagrave, a new contract was entered into, marked 'B,' dated May 26, 1854, whereby in consideration of complainants' buying for $117, all the odds and ends and parts of the machines which said Seagrave then had on hand, of the description mentioned in paper marked 'A' (a sample of which is marked 'S. H. B.'), it being a machine containing the knife-holder loose upon the knife-rod, in other words, containing Pratt's alleged im-

provement; said Seagrave agreed to give up all rights acquired by him under and by virtue of paper marked 'A.' And in pursuance of this agreement, said Seagrave sold and delivered to said complainants, all the parts of such machines he then had on hand (these being separated by the complainants and said Seagrave in person, from the parts of the other apple paring machines, then on hand and mentioned above). And from and after that time said Seagrave ceased wholly from making such machines as contained in said Pratt's alleged improvement, and resumed the manufacture of machines previously patented by said Seagrave, adding other and further improvements, for which he applied for a patent, one of which is the mode of connecting the spring which draws the knife-rod towards the apple, with the knife-rod itself. In no instance has said Seagrave made a machine since said last-mentioned agreement, having a knife-holder united to the knife-rod in the manner described in said Pratt's patent."

It will be perceived that the defendants do not here claim the right to continue the manufacture, notwithstanding the covenant. On the contrary the defence is a denial that the covenant has been violated. And my opinion is, that if the facts alleged in the answer were proved, they would not affect the validity of the final agreement of May 26, 1854, which contains the covenant in question. If those facts were true, there was, at the date of that agreement, a controversy between the complainants and Seagrave, in which Seagrave was equitably right, and in the course of which the conduct of the complainants had been unfair; but, assuming this to be so, Seagrave, with a knowledge of all the facts and under no duress, made the agreement for a compromise, of May 26th, and the complainants executed it on their part, and bought the machines and parts of machines, and paid for them as agreed. The answer does not show any reason to suppose that the agreement was unconscientious or unreasonable. Seagrave cannot be allowed to go behind this agreement, especially while he retains the fruits of it. Moreover there is no evidence of the facts alleged in the answer respecting these negotiations. The bill alleges, that the agreement of May 26th, was entered into by the complainants for the sake of avoiding litigation, and because Seagrave was not pecuniarily responsible. The answer does not deny either of these allegations. So far as the motives of the complainants for entering into the contract are concerned, and so far as respects the pecuniary responsibility of Seagrave, the answer is silent; and as to the motive of Seagrave the bill charges nothing. The answer goes into a history of negotiations and agreements which it alleges preceded this agreement. But this is responsive to nothing in the bill, which contains no allegations concerning any such negotiations or agreements, nor respecting the state of the controversy between the parties, further than to say, what the answer in substance admits, that the complainants requested Seagrave to desist from making machines which violated their patent.

Shortly stated, the case is this. The bill alleges that a controversy existed, concerning the violation of a patent, and that an agreement of compromise was made by the complainants, to avoid litigation, and because the defendant was not pecuniarily responsible. The answer says nothing on either of these points, but goes into a history of the controversy which was compromised. I am of opinion it is not responsive to the bill and is not evidence, and that no sufficient reason appears, why the compromise should not be executed on Seagrave's part.

As to the other question, whether the machines made by Seagrave do include in substance, the improvement for which the complainants' letters patent were granted, I am of opinion that the infringement is made out. The improvement patented consists in so attaching the knife block to the rod which moves it, as to allow it to rotate round the rod at right angles therewith, and thus the knife accommodates itself to any irregularity in the surface of the vegetable to be pared. The defendants, instead of making the knife thus movable on the rod, have made the rod movable in its socket. The knife block has the same motion; but in one, it is around the rod, in the other, it is with the rod. The change is so obvious and slight, and its practical effect so small, if it be any thing, that I cannot consider it introduces a substantially new mode of operation, within the meaning of the patent law. [5 Stat. 117.] See Winans v. Denmead, 15 How. [56 U. S.] 330. It is one of those changes of form merely, or of mechanical structure, which would not be the subject of a patent, without showing that some new or materially improved result is obtained by it, which is not made out in this case. As against Seagrave, I think the complainants entitled to a decree for an injunction and an account. But Larned, the other defendant, is merely a workman in the employment of Seagrave. No decree for an account can be had as against him, for he has nothing to do with any profits; and upon the facts of this case, I entertain doubt whether he ought to be enjoined, upon the footing of Seagrave's covenant. I observe also, that the prayer for an injunction and an account is directed against one defendant only. Probably this was by inadvertence; but unless the complainants elect to dismiss their bill, as against Larned, and to take a decree against Seagrave alone, I must consider what is to be the effect of thus joining Larned.

[For other cases involving this patent, see Cases Nos. 12,362 and 12,365.]