MANN's BOUDOIR CAR CO. v. MONARCH PARLOR SLEEPING CAR CO.

(*Circuit Court, S. D. New York.* March 7, 1888.)

1. PATENTS FOR INVENTIONS—NOVELTY—SLEEPING CARS—SIGNAL APPARATUS.
   The seventh claim of letters patent No. 122,622, issued January 9, 1872, to William D Mann, for an improvement in compartment railway cars, describing an arrangement of wire signal bells or apparatus to extend from each compartment to the porter's room, in view of the fact that such signals were in common use in hotels, on steam-boats, and elsewhere prior to the grant of the letters patent, is void for want of novelty, as the mere change of location is not patentable.

2. SAME—INFRINGEMENT—SLEEPING CARS—VENTILATING APPARATUS—DUST-ARRESTERS.
   Patent No. 327,289, granted September 29, 1885, to William D. Mann, for an improved system and apparatus for ventilating railway cars, providing the car

with an even supply and exhaust of fresh warm air, from which all dust and impurities have been removed, without danger of draft to passengers, the seventh claim of which describes a combination of a fresh-air conduit, a dust-arrester, a closet, and a flue running from the closet through the car, the dust-arrester consisting of a water-tank, which catches the large cinders and particles of dust. lined with excelsior, which completes the filtering process, is valid, and infringed by a combination which differs only in using a dust-arrester consisting of a box of wire netting filled with wet sponges.

In Equity.    On bill for injunction.

Bill for injunction by Mann's Boudoir Car Company to restrain the Monarch Parlor Sleeping Car Company from infringement of letters patent granted William D. Mann for an improvement in compartment cars for railways, and an improved system and apparatus for ventilating railway cars.

*Louis W. Frost* and *Charles G. Coe*, for complainant.

*John L. S. Roberts,* for defendant.

COXE, J.    The bill alleges the infringement of three letters patent granted to William D. Mann, and now owned by the complainant. The first of these patents, No. 122,622, dated January 9, 1872, is for an improvement in compartment cars for railways. The drawings and specification describe a car constructed on the European model, with isolated compartments, side doors, and a running board for attendants extending entirely around the car. At the end of the car is the porter's room, which is connected with each compartment by speaking-tubes and wire signal-bells. A passenger desiring to communicate with the porter pulls the bell lever in his compartment and jingles a bell in the porter's compartment. The seventh claim, which alone is involved, is in these words:

"(7) The arrangement of the bells or signal apparatus, to extend from each of the compartments to the porter's room, substantially as shown and described."

The defenses are non-infringement and lack of patentable novelty.

The defendant's cars are known as parlor sleeping cars and are built upon the American plan, substantially like the well-known Pullman cars. An electric push button is placed near each seat, so that the passengers can summon the porter by means of a bell and indicator located at the end of the car. The complainant admits that, prior to the alleged invention, lever pull-bells, like those shown in the drawings and specification, had been used in private houses and in hotels. They had also been used in steam-boats, not only to enable the helmsman to communicate with the engineer, but also to enable the passengers to summon the vessel's attendants, a bell-pull being placed in each state-room for that purpose. The record further shows that the idea of an electrical apparatus; by means of which the passengers in a railway car could signal the trainman, was also old, for in the patent granted to Prud'homme in March, 1871, the inventor says:

" A button or knob may be put, if desired, in passengers' compartment, in order to allow in certain cases the latter to call.   *   *   *   A knob or com-

municator, placed within a passenger's carriage, and put in communication with both wires passing underneath, would also cause a ringing at both ends of a train, and thus put the passengers of a compartment in communication with the attendants of said train."

The patentee appears to have been the first to employ a wire signal-bell to summon a servant in a railway car; but can it be that it required an exercise of the inventive faculties to do this, in view of the fact that the identical apparatus had previously been used for the identical purpose in dwelling-houses, hotels, and steam-boats? The additional fact should also be remembered that similar signaling appliances had been used in horse cars and in railway cars. The only novel feature that can by the most liberal construction be discovered, is the location of the apparatus in railway cars. The operation is the same; the result is the same. If it be invention to place a jingle bell in a passenger car, then each successive applicant who finds a new situation for such a bell is entitled to the rewards of an inventor. If this claim is held to be valid, with what consistency could a patent be refused to a person who, for the first time, should connect in a similar manner a row of bath-houses at the sea-side, or the boxes in a theatre, or the tables in a restaurant? To remove a bell from the state-room of a passenger steamer, and place it in the state-room of a passenger car, requires no more of the inventive faculty than to take a steam-whistle from a tug-boat and place it on a woolen mill, —no more than to place a doctor's speaking-tube at the front door of a lawyer. The supreme court has over and over again decided that it was not invention to find a new place for an old device without change in the result, or in the manner of operation. See cases cited in *Electric Co.* v. *Alarm Co.*, 33 Fed. Rep. 254. But even if the foregoing views are incorrect, it is quite clear, in view of the state of the art and the minute description of the specification, that the claim must be confined, to some extent at least, to the mechanism and arrangement disclosed. It would be a most unwarranted expansion of the claim to give it the broad construction contended for by the complainant, which would bring within its scope every mechanical contrivance by which the porter in a railway car is summoned by the passengers.

The questions arising under letters patent No. 188,991, granted to William D. Mann, January 8, 1878, were, practically, disposed of on the argument. The defendant discontinued the use of the reversible flap, covered by the claim in question, before the two cars, which had the infringing couches, were placed at the disposal of the public. The only serious objection urged by the defendant's counsel against a decree for an injunction being given to the complainant upon the third claim, was that it might affect the question of costs. The disposition which is made of the other patents will remove this objection.

The third patent in suit, No. 327,289, was granted to William D. Mann September 29, 1885, for an improved system and apparatus for ventilating railway cars. The object sought to be accomplished by the inventor, so far as this controversy is concerned, was to provide the car with an even supply and exhaust of fresh warm air, from which all dust

and impurities have been removed, without danger of draft to the passengers. The combination which is described as producing this result consists of a fresh-air conduit, a dust-arrester, a closet which receives the air, a delivery flue running from the closet through the car, a heater within the air-closet, and heater pipes extending through the delivery flue to warm the air. The seventh is the only claim alleged to be infringed. It is as follows:

"(7) In a railway-car, a fresh-air conduit, a dust-arrester, a closet, and a flue running from the closet through the car, and provided with registers, as described, in combination with a heater located within said closet, and heating-pipes located within said flue, all constructed and arranged as and for the purposes set forth."

The defenses are, as before, lack of invention and non-infringement. None of the prior patents show the combination of this claim. The separate elements were old, but no one, before Col. Mann, had assembled them as in the patent; no one had accomplished a result so satisfactory. Every doubt should be resolved in favor of the patent, especially when it is remembered that the patentee has introduced a valuable and practical improvement in car ventilation, as fully demonstrated by the experiments made in June last in the presence of the board of railroad commissioners of this state.

Does the defendant infringe? That the combination used by the defendant has all the elements of the claim, or equivalents therefor, and that they perform substantially the same functions, is sufficiently clear. There are differences of construction between this and the complainant's apparatus, but they are matters of detail which do not change the essential features of the patented combination. For instance, the dust-arrester shown in the drawings and specification consists of a water-tank which catches the larger cinders and particles of dust, and a body of wet "excelsior," or similar material, through which the air is forced to complete the filtering process. In the defendant's car the air is forced through a box of wire netting filled with moistened sponges. This is the most important variation, and though at first sight it may seem substantial, it is thought there is great force in the suggestion that the inventor did not intend to limit himself, in this claim, to the precise form of dust-arrester shown, for the reason that he employs the indefinite article in the expression "*a* dust-arrester," and also for the reason that he is careful to specifically cover the "dust-arresting tank" in other claims. The claim in controversy is for a combination. The defendant has appropriated the combination, except that one element thereof, the dust-arrester, is not made precisely after the pattern of the dust-arrester of the patent. But it performs the same functions and, in all essential particulars, it is the same. The differences in the construction of the closet and heater are not material. The question of infringement is a perplexing one, and the conclusion that the defendant infringes has been reached with considerable hesitation. The rule which sustains the complainant's position is clearly stated in *Machine Co.* v. *Murphy,* 97 U. S. 120, 125, as follows:

"Except where form is of the essence of the invention, it has but little weight in the decision of such an issue, the correct rule being that, in determining the question of infringement, the court or jury, as the case may be, are not to judge about similarities or differences by the names of things, but are to look at the machines or their several devices or elements in the light of what they do, or what office or function they perform, and how they perform it; and to find that one thing is substantially the same as another, if it performs substantially the same function in substantially the same way, to obtain the same result, always bearing in mind that devices in a patented machine are different, in the sense of the patent law, when they perform different functions or in a different way, or produce a substantially different result."

See, also, *Cantrell* v. *Wallick*, 117 U. S. 689, 6 Sup. Ct. Rep. 970; *Loom Co.* v. *Higgins*, 105 U. S. 580, 598; *Winans* v. *Denmead*, 15 How. 340; *Sargent* v. *Larned*, 2 Curt. 340.

The complainant is entitled to a decree for an injunction upon the third claim of letters patent No. 188,991, and for an injunction and an accounting on the seventh claim of letters patent No. 327,289; but, as the defendant has been successful upon letters patent No. 122,622, the decree must be without costs. *Trap Co.* v. *Felthousen*, 22 Blatchf. 169, 20 Fed. Rep. 633.