P. P. MAST & CO. v. RUDE BROS. MANUF'G CO.

(Circuit Court of Appeals, Seventh Circuit. October 12, 1892.)

No. 18.

1. PATENTS FOR INVENTIONS—NOVELTY—CULTIVATORS.

Letters patent No. 354,717, issued December 21, 1886, to P. P. Mast, for an improvement in cultivators, consisting in the construction of couplings by which the beams and alignment rods are connected with the axle, and in the construction of the beam brackets and crossheads which carry the shovel standards at the point where the brackets and standards join, so as to maintain the alignment between the shovels and the axle, irrespective of a change in the lateral position of the shovel beams, are void for want of novelty.

2. SAME.

Letters patent No. 237,740, issued February 15, 1881, to C. O. Gardiner and W. C. Downey, for a cultivator in which the drag bars are coupled to a wheeled frame, and arranged to swing vertically and laterally, are void for want of novelty.

Appeal from the Circuit Court of the United States for the District of Indiana.

In Equity. Suit by P. P. Mast & Co. against the Rude Bros. Manufacturing Company for infringement of a patent. Decree for defendant. Complainant appeals. Affirmed.

H. A. Toulmin, for appellant.
Stem & Allen, for appellee.

Before GRESHAM, Circuit Judge, and JENKINS and BLODGETT, District Judges.

BLODGETT, District Judge. This is an appeal from the circuit court for the district of Indiana, for the review of a decree rendered by said court, dismissing, for want of equity, a bill filed therein by appellant against appellee, charging appellee with the infringement of letters patent granted December 21, 1886, to P. P. Mast for a cultivator, which patent bears patent office No. 354,717; and a patent granted February 15, 1881, to C. O. Gardiner and W. C. Downey for a cultivator, which bears patent office No. 237,740 both of said patents having been duly assigned to and owned by appellant. The scope and nature of the device covered by patent No. 354,717 is set forth in the specifications as follows:

"This invention relates to improvements in cultivators, and is of that class in which provision is made for maintaining the alignment or parallelism between the shovels and the axle irrespective of a change in the lateral position of the shovel beams; and the invention consists essentially in the construction of the couplings by which the beams and alignment rods are connected with the axle; and in the construction of the beam brackets and the crossheads which carry the shovel standards at the point where those brackets and those standards are connected together. The object in view in the first of these features is the attainment of a free oscillating movement of the couplings on the axle, which admits of the ready elevation and depression of the beams with respect to the ground, and also of the lateral adjustment of that portion of the couplings to which the alignment rod and the beam are directly connected for the purpose of adjusting the beams laterally with respect to the rows. The object in view in the second of these features is the prevention of the twisting tendencies of the crosshead with respect to the beam, due to the liability of the ends of the crosshead to which the shovels are attached to work up and down."

Fig. 1.

The vertical and lateral movements of the plow beam are obtained by a sleeve fitted upon the axle near the shoulder of the wheel spindle, which sleeve moves freely upon the axle. Upon this sleeve a collar is placed, movable laterally upon the sleeve with a set screw, by which it

may be fastened and held firmly at any point upon the sleeve. Attached to this collar is a vertical "hub," as it is called, to which the end of the plow beam is attached by means of a forked bracket, which grasps the hub, so to speak, at the top and bottom, and is held in place by a bolt passing vertically through the hub and the ends of the bracket, so that the plow beam will swing laterally, right or left, upon this bolt. An arm also projects horizontally parallel with the axle from the collar, and a lug is attached to one of the crossheads, and attached to this arm and crosshead is a rod which is parallel with the plow beam, "whose function is that of keeping the crosshead in a parallel line with the axle, no matter whether the beam be moved more or less to either side of the direct line of the draught, the result of which is to keep the shovels of each crosshead in the same relative position to the axle."

The second feature of the device is the enlargement of the contact surfaces of the crosshead and bracket, so that they take a firmer hold upon each other, and prevent the "twisting" tendency, as the patentee calls it, of the crosshead.

A disclaimer is inserted at the foot of the specifications in the following words:

"I would not have it understood that I am intending to lay a broad claim to the sleeve constructed to fit upon the axle, and provided with ribs and a collar fitted to the sleeve having a portion to which the beam yoke is pivoted, as this device is embodied in the patent issued to Gardiner & Downey, February 15, 1881, and assigned to my assignee in this case."

This patent has five claims, as follows:

"(1) In a cultivator, the combination, with a sleeve constructed to fit upon the axle, a collar fitted to said sleeve, and having integrally formed with it a vertically disposed hub and a laterally disposed arm.

"(2) In a cultivator, the crosshead having a hub-like portion enlarged at the upper and lower ends to form disk-like surfaces to prevent the twisting tendency of the head when mounted, and having lateral arms constructed to form connection with the shovel standards, and a portion to connect with the alignment rod.

"(3) In a cultivator, the combination, with a beam and the beam bracket, M, having a transverse opening, and laterally enlarged where the opening occurs, of a crosshead, R, having a hub-like portion, R, enlarged to agree with the bracket, and pivotally mounted in said opening, and having arms to which the shovel standards are connected.

"(4) In a cultivator, the beam bracket, M, consisting of a shank, N, for the beam, an enlarged portion, Q, having a transverse opening for the crosshead, and another portion for the handles.

"(5) In a cultivator, the combination, with the axle, the coupling constructed to oscillate thereon, and with a portion capable of lateral adjustability, the beam and the alignment rod secured to said adjustable portion, of the bracket secured to the beam, having an enlarged portion and a transverse opening therein, and having a portion for the attachment of the handle, and the crosshead having a hub-like portion pivotally mounted in said opening, and arms for the attachment of the shovel standards."

The Gardiner & Downey patent, No. 237,740, covers the construction of a cultivator in which the drag bars are coupled to a wheeled frame, and arranged to swing vertically and laterally, and contains five claims, but infringement is insisted upon only as to the fifth of those claims, which is:

"(5) The combination of the parts, b, c, the connecting pivot, and the screw, i, applied to hold the pivot as shown."

The lateral motion or side swing of the drag bar is obtained by the pivot pin, d, which passes vertically through the forked ends of the drag bar, and through the head or block, b. This pin on which the drag bar swings or vibrates is held in place by a screw inserted in the rear side of the head, b, so that it may be made to press firmly against the pin, thus preventing the pin from rotating in the head, and allowing the forked ends of the drag bar, c, to rotate on the portions of the pin, d, which project above and below the head, b.

The court below, in a short opinion, copied into the brief of appellant's solicitor, disposed of the case by finding, from the proof, that both these patents were void for want of patentable novelty. We have looked carefully into the proof in the case bearing upon the question of novelty as to both these patents, and feel obliged to concur in the decision of the court below. It is not contended on the part of appellant that the idea of maintaining the alignment between the shovels and axle was new with Mast; and the disclaimer in Mast's patent concedes that he was not the inventor of the device for securing the vertical and lateral swing or movement of the forward ends of the plow beam upon the axle.

The idea of maintaining the alignment between the shovels and axle is clearly shown in the Easterly patent of April, 1856; in the Swickard patent of 1873; in the Dale patent of March, 1875; in the Huffman patent of 1876; while in the Reed patent of December, 1883, we find all the essential elements of the first claim of this patent,—the sleeve, the beam vertically pivoted, and a collar working on the sleeve, the horizontal arms, and the alignment rod, all designed and operating to the same end as the same parts are designed and operate in the appellant's patent.

The four other claims of the patent all relate to the crosshead and bracket holding it. They all cover the same device in slightly different forms of expression, and the novelty is claimed to consist in constructing the crosshead with a hub-like portion enlarged at its upper and lower ends to correspond with similar enlargements of the brackets so as to increase the bearing surfaces of the two parts, and thereby prevent twist-

ing.   The mere expansion of these parts where brought in contact does not involve invention.   It gives them no new function and produces no new result.   It was what any skilled mechanic would do if it was found, in practice, that the parts in contact were liable to twist.   It is the same idea as is involved in the common and well-known device of what is called the fifth wheel to a wagon, that is, a larger bearing surface is given, in order to secure steadiness, and less liability to breakage of the parts.   It is true that the form of the parts or elements of the appellant's device differs somewhat from that shown in the prior devices which I have cited, but the essential principle of the appellant's machine is found in the prior devices which have been referred to.

"A change of form of a machine, without a change of mode of operation or result, is not patentable."   Winans v. Denmead, 15 How. 330. "A change of mechanical structure is not patentable unless it produces a new and entirely different result."   Sargent v. Larned, 2 Curt. 340; Mabie v. Haskell, 2 Cliff. 510; Aiken v. Dolan, 3 Fish. Pat. Cas. 204.

The fifth claim of the Gardiner & Downey patent is a combination claim, the elements of the combination being the head, b, the forked plate, c, the pivot pin, d, and the screw, i.   All these elements are presumed to be old, but a combination of old parts may make a valid patent, if a new result is produced by such combination.   The efficient member of this combination is the screw, i, which is applied to hold the pivot, d, firmly in the head, b.   It is, as the specifications say, "tapped into the rear side of the head," so that it may be made to bear upon and hold the pivot.   It is merely what is known in mechanics as a "set screw."   A "set screw" is defined to be "a screw, as in a cramp, screwed through one part tightly upon another to bring pieces of wood, metal, etc., in close contact."   Imperial Dict.   "Set screw.   A screw employed to hold or move objects to their bearings, as the bits in a cutter head or brace."   Knight, Mechanical Dict.   The only function or office of this set screw, i, is to hold the pin, d, in place,—the same result as is produced by a set screw in a cutter head, that of holding the bit or cutter in place; or, as the first definition quoted says, it brings the pieces of metal, that is, the pin and the head, in close contact.   No new result is produced by this combination from that produced by the use of a set screw in a cutter head.   This claim of the patent is therefore void for want of novelty.

The decree of the circuit court is affirmed.