## Case No. 8,949.

MAGIC RUFFLE CO. v. ELM CITY CO.

[13 Blatchf. 151; 2 Ban. & A. 152; 8 O. G. 773.] [1]

Circuit Court, D. Connecticut. Oct. 20, 1875.

PATENTS — LICENSE — AGREEMENT — VIOLATION — VALIDITY OF PATENT—DISCOVERY—ESTOPPEL.

1. Letters patent granted to George B. Arnold, May 8th, 1860, for an "improvement in ruffles," and three other patents, were owned by the plaintiffs, a corporation of New York. They had recovered a verdict in a suit for an infringement of the Arnold patent. The defendants, a corporation of Connecticut, had been infringing that patent. On the 21st of February, 1863, an agreement of license was made between the two corporations, whereby the plaintiffs agreed to license the defendants, under the four patents, to manufacture and sell under such license, exclusively, the ruffle then manufactured and sold by the defendants, and known as "the double ruffle," and to use the patented machines in the manufacture only of the said double ruffle, and whereby, in consideration of said license, the defendants expressly recognized the validity of each of said patents, and agreed to receive licenses as aforesaid under each of them, and expressly agreed that they would manufacture and sell only the said double ruffle, and that the said double ruffle should not be divided by them, and whereby they agreed to submit, at all times, their manufactory to inspection, so that the plaintiffs should be advised of the kind of ruffles which were being manufactured, and to pay counsel in the suit above named, and to retain and pay counsel thereafter in suits relating to and in support of said patents, and to pay one-half of the other expenses of sustaining said patents, and whereby each party agreed to assist the other in suits which might be instituted by either for the purpose of maintaining its rights under either of said patents. The bill in this suit alleged, that, after the agreement of license was made, the defendants continued to make and sell the double ruffle of the kind referred to in the agreement, and also made and sold, in violation of the agreement and of the Arnold patent, quantities of single ruffles, each of which contained the invention described and claimed in said patent, and prayed for a disclosure by the defendants of their profits and of the number of yards of single ruffle containing said improvement which they had made and sold, and for the payment of such profits and of the damages sustained by the plaintiffs. The answer, besides denying the infringement, denied the novelty of the invention covered by the Arnold patent, and alleged that the defendants had, ever since the agreement was executed, been engaged, to the knowledge of the plaintiffs, in the sale of ruffles which were not claimed by them, until about the time of the commencement of this suit, to violate said patent, and that this suit was brought on a stale claim, and one unfounded in equity: *Held*, that the defendants were estopped, by their covenants in the agreement, from denying the validity of the patent.

[Distinguished in National Manuf'g Co. v. Meyers, 7 Fed. 357.]

2. The contract was not merely an agreement for a license, but was an executed license.

3. The plaintiffs could sue for either an infringement of the patent or a breach of the agreement, and the bill in this case could be regarded as a bill in either aspect.

[Cited in McKay v. Smith, 29 Fed. 296; American Box Mach. Co. v. Crosman, 57 Fed. 1025.]

4. As a bill founded on the agreement, although no royalties were payable, and although the patent had expired, the bill is not open to the objection that there is a complete and adequate remedy at law, because an account and a discovery are necessary to ascertain the facts from which the damages to the plaintiffs can be computed, and this bill is a bill for an account and a discovery.

[Distinguished in Washburn & Moen Manuf'g Co. v. Cincinnati Barbed Wire Fence Co., 42 Fed. 677.]

5. The contract having become executed, and the defendants having enjoyed its benefits, they cannot, in the absence of fraud on the part of the plaintiffs, deny the truth of their admission of the validity of the patent.

6. The invention in the Arnold patent consists in confining the tucks and gathers in place and securing them to a binding or ungathered piece of cloth, by one and the same series of stitches, or, in other words, causing one series of stitches to perform the double duty of confining the plaits and attaching them to the binding or other material. The claim, namely, the ruffle "as a new article of manufacture, the gathered cloth A (the ruffled strip) being secured to the binding B (the band) by the single series of stitches C, which perform the double duty of confining the gathers and of securing the gathered cloth to the binding, substantially as herein set forth," is infringed by the defendants' ruffle, which is a plaited strip combined with a band, a single row of stitches performing the office of securing the gathers and uniting the gathered cloth to the band, although it has, in addition, a second row of stitches in the band, not securing the band to the gathered cloth, and although it is a finished article, having a band with an even and finished edge, and is designed to be worn as a neck ruffle.

7. The defendants' ruffle is not a double ruffle, and so within the license, because, if it is divided between the two rows of stitches, one part will be a ruffle, and the other will be a useless strip of stitched cloth, not a ruffle, in any proper sense of the word.

8. The defence, that the agreement in regard to the manufacture of ruffles other than the double ruffle was subsequently abandoned by the plaintiffs, is not sustained.

9. Nor is the defence sustained, that the claim has become stale, by reason of the laches of the plaintiffs in vindicating their rights, and in acquiescing in the assertion of adverse rights by the defendants.

In equity.

Clarence A. Seward and William D. Shipman, for plaintiffs.

Charles R. Ingersoll and Edwin W. Stoughton, for defendants.

SHIPMAN, District Judge. The parties in this case are corporations. The complainants were created under the laws of the state of New York, and the defendants were incorporated under the laws of the state of Connecticut, and are established at New Haven, in this district. The bill alleges, that the complainants are and have been since September 18th, 1860, the owners of letters patent number 28,244, granted to George B. Arnold, on May 8th, 1860, for a new and useful "improvement in ruffles," and were also, in the month of February, 1863, the owners of three other patents, theretofore issued to George B. Arnold and Alfred Arnold, for other improvements in machinery for mak-

---

[1] [Reported by Hon. Samuel Blatchford, District Judge; reprinted in 2 Ban. & A. 152; and here republished by permission.]

ing ruffles, and in ruffles, which improvements were generally known as the "double feed," "separator," and "ruffle without a band;" that prior to the month of February, 1863, upon a suit of the complainants against Douglas and Sherwood, in the circuit court of the United States for the Southern district of New York, a verdict was rendered by which patent number 28.244 was sustained; that the defendants had at that time been engaged in manufacturing and selling ruffles containing the improvement described in said letters patent; and that, in order to avoid further litigation, and for peace sake, and for the purpose of harmonizing the business conducted by the two corporations, an agreement, dated February 21st, 1863, was entered into, and was thereafter an executed agreement of license, and no legal proceedings against the defendants were commenced. The material portions of this agreement are as follows: "The Magic Ruffle Company hereby agree to license the said Elm City Company under the four several patents granted to George B. Arnold, and George B. and Alfred Arnold, to wit, the double feed. the separator and its combinations, the ruffle with a band, and the ruffle without a band, to manufacture and sell under said license, exclusively, the ruffle now manufactured and sold by the said Elm City Company, at their manufactory in New Haven, Connecticut, and known as the double ruffle, and to use the machines patented to the said George B. Arnold, and George B. and Alfred Arnold. in the manufacture only of the said double ruffle. In consideration of the said license, the said Elm City Company do hereby expressly recognize the validity of each of said patents, and hereby agree to receive licenses as aforesaid under each of them, and hereby expressly agree that they will manufacture and sell only the said double ruffle, and that the said double ruffle shall not be divided by the said party of the second part." The Elm City Company also agreed to submit, at all times, their manufactory to inspection. so that the Magic Ruffle Company should be advised of the kind of ruffles which were being manufactured, and to pay counsel in the suit of Douglas and Sherwood. and to retain and pay counsel thereafter in suits relating to and in support of said patents. and to pay one-half of the other expenses of sustaining said patents. It was mutually agreed, that each party was to assist the other in suits which might be instituted by either party for the purpose of maintaining its rights under either of said patents. The bill also alleges, that, thereafter, the defendants continued to manufacture and sell the double ruffle of the kind referred to in the agreement. and that, after February 21st, 1863, they made and sold, in violation of said agreement and of said letters patent, many thousand yards of single ruffles. each of which contained the invention described and claimed in the said letters

patent, and prays that the defendants may be required to make a disclosure of all their gains and profits, and of the precise number of yards of single ruffle containing the said improvement, which they have made and sold, and to account for and pay over such gains and profits as have arisen to them, and also all damages which the complainants have sustained by reason of the premises.

The answer denies that the defendants have made and sold any ruffles in violation of letters patent No. 28.244, alleges that the ruffles which they have made were made by the aid of machinery which was invented by and patented unto Crosby and Kellogg, and that, at and prior to said agreement, they were manufacturing, by the use of said machinery, as they lawfully might, double ruffles of a peculiar kind, which were afterwards divided so as to form single ruffles of a form and arrangement some of which somewhat resembled the ruffles manufactured by the complainants, and, to avoid any possible controversy with said complainants, the said defendants agreed not so to manufacture single ruffles thereafter, but that said agreement was intended only to prevent the manufacture of that particular kind of single ruffle; and that the defendants have not, since the date of said agreement, made or sold a gathered ruffle having a single series of stitches. which is the only kind of ruffle claimed in patent No. 28,244. The answer denies the novelty of the alleged improvement described in said patent. and alleges that the defendants have, ever since the execution of said agreement, been engaged, to the knowledge of the complainants, in the sale of ruffles which were not claimed by them, until about the time of the commencement of this suit, to be in violation of said patent, and that this action is brought upon a stale claim, and one which is unfounded in equity.

(1.) The first question in this case is—are the defendants estopped, by their covenants in the agreement, from denying the validity of the complainants' patent? The defendants contend, that the suit is against them simply as infringers. for a violation of the complainants' patent rights, and that the covenant which is claimed to be an estoppel, being contained in an instrument collateral to the patent, cannot operate as an estoppel in a suit which is not founded upon the agreement but upon the patent, and that no bill in equity can be sustained upon the agreement, inasmuch as for a breach of that contract the complainants have a full and adequate remedy at law.

The contract is not merely an agreement for a license, but is an executed license. Such was the intention of the parties, as it is to be collected from the whole of the instrument. Buell v. Cook, 4 Conn. 242. By the agreement. the defendants were licensed to manufacture and sell the double ruffle only. If they manufactured and sold any other ruffle

which was protected by either of the patents, they became, as to such ruffle so improperly manufactured, infringers, and the complainants could resort to an action at law or in equity, to obtain redress for this violation of their exclusive patent rights. If the licensee "uses the patented invention beyond the limits of the license or grant, or in a way not authorized by the license or grant, then there has been a violation of a right secured to the patentee under a law of the United States giving to him the exclusive right to use the thing patented, although such licensee performs, according to their terms, all the covenants entered into by him." Goodyear v. Union India Rubber Co. [Case No. 5,586]; Wood v. Wells [Id. 17,967]. And, if the licensees have also expressly covenanted, in their agreement of license, that they will do or will not do a particular act, or will not use the invention for a particular purpose, a violation of such covenant is also a breach of contract, not arising under the laws of the United States, but for which remedy may be sought in the circuit courts of the United States, provided the citizenship of the parties gives jurisdiction to such court. Goodyear v. Union India Rubber Co., cited supra; Goodyear v. Congress Rubber Co. [Id. 5,565]; Wilson v. Sanford, 10 How. [51 U. S.] 99. In this case, it was competent for the complainants to take either one of the two remedies for the alleged injury, which have been mentioned. They could bring a bill alleging an injury to their exclusive rights under the laws of the United States, or, as the residence of the parties gave this court jurisdiction, could bring a proper suit, setting up the breach of the contract as the gravamen of their action. The averments of their bill are sufficient to justify a court in holding, if necessary, that it is a bill for an injury to their patent rights, but, it is manifest, from an examination of the stating part of the bill, that the pleader intended to make the alleged breach of the agreement the foundation of the action, and that he is seeking to recover damages for an injury to the complainants arising out of the violation of the contract.

But the defendants insist that a bill in equity, based upon the contract, cannot be sustained, because, for a breach of the contract, there is a complete and adequate remedy at law. There is, undoubtedly, a remedy at law for the alleged injury. The only question is, whether it is complete and adequate. If the complainants were seeking to recover royalties which the defendants had agreed to pay, inasmuch as the account is particularly within the knowledge of the defendants, or, if the patent was still in existence, and the preventive remedy by injunction against future injuries could be administered, there would be no question that a bill in equity would be a proper remedy. Eureka Co. v. Bailey Co., 11 Wall. [78 U. S.] 488; Goodyear v. Congress Rubber Co. [supra]; Rich v. Hotchkiss, 16 Conn. 409. In this case, the defendants had

not agreed to pay royalties, and an injunction cannot be granted, inasmuch as the patent has expired. It is alleged that the defendants have violated the contract of license by manufacturing and selling a ruffle which they were not authorized to make, and which they had agreed not to make. By this violation the complainants say that they have been injured, and the redress which they ultimately seek is the payment of damages. Although the suit is upon the contract, the damage to the complainants, if any, is the damage which they have sustained from the injury to their patent rights. The ascertainment of the facts from which such damages can be estimated, is, in cases of injury to property in letters patent, peculiarly within the province of a court of equity, because, the facts from which damages are to be computed can only be ascertained by an account and a discovery of the number and amount of articles which have been sold by the defendants—facts which are exclusively within their knowledge. They alone have the evidence which can enable the complainants to recover, either at law or in equity. It is true, that damages are not ordinarily assessed by a court of equity (Livingston v. Woodworth, 15 How. [56 U. S.] 546); and, prior to the act of 1870 [16 Stat. 198], authorizing the circuit court, as a court of equity, to decree the payment of damages in patent cases, damages were not recoverable in equity suits. A bill in equity proceeded, prior to that act, upon the theory that the infringer was equitably bound, as a trustee, to pay to the patentee the profits which had been made by an unlawful use of the invention. Cowing v. Rumsey [Case No. 3,296]. But, this bill is a bill for an account and a discovery. It avers that the complainants do not know, and cannot set forth, the number of yards of ruffle which have been made in violation of the patent and of the agreement, and prays for a disclosure of the quantity which has been made and sold. Whether, having obtained jurisdiction of the case, the court will proceed to grant further and complete relief, and to exercise a power which courts of equity have, in certain cases, heretofore exercised (Russell v. Clark's Ex'rs, 7 Cranch [11 U. S.] 69; Pratt v. Law, 9 Cranch [13 U. S.] 456; Insurance Co. v. Colt, 20 Wall. [87 U. S.] 560), and what relief will be granted, are questions which can be determined more properly after the report of the master shall have been received.

It is well settled, that, where the suit is upon a license, or upon a contract, which license or contract contains covenants on the part of the defendants, by which they admit the validity of the plaintiffs' patent, and agree to maintain it by suits or legal proceedings, and there has been an enjoyment of the license by the defendants, they are estopped from denying the truth of their admissions, unless it shall be averred, by cross-bill, or answer, that such agreement was obtained by fraud, surprise or imposition. Eureka Co. v. Bailey

Co., 11 Wall. [78 U. S.] 488; Crossley v. Dixon, 10 H. L. Cas. 293. It is evident, from an inspection of this agreement, and from the answer, that there had been litigation in regard to the validity of the patents, between the plaintiffs and Douglas and Sherwood, and that the parties to the agreement entered into it in order to avoid similar litigation between themselves, and to prevent future violation of the patents by others. "The agreement was manifestly intended to adjust conflicting rights," and it cannot be permitted, in the absence of fraud on the part of the plaintiffs, that the defendants should deny the truth of their careful and deliberate admissions, especially since the contract has become executed, and they have enjoyed its benefits.

(2.) Is the ruffle which has been manufactured and sold by the defendants, and which is styled the "Princess ruffle," an infringement of patent No. 28,244? The specification of the patent states, that the nature of the invention "consists in confining the tucks or gathers in place, and securing them to a binding or ungathered piece of cloth, by one and the same series of stitches; or, in other words, causing one series of stitches to perform the double duty of confining the plaits and attaching them to the binding or other material." The claim is for the ruffle "as a new article of manufacture, the gathered cloth A (the ruffled strip), being secured to the binding B (the band), by the single series of stitches C, which perform the double duty of confining the gathers and of securing the gathered cloth to the binding, substantially as herein set forth." The article is a plaited or gathered piece of cloth, the gathers of which are confined in their place by a row of stitches, which, also, at the same time, secures the gathered cloth to a band, and this band is an unhemmed strip of cloth, which is to be attached by the purchaser to whatever garment the ruffle is to ornament. "The distinguishing features of this article, by which it is materially different from all ruffles known before," have been declared to be, in the case of Magic Ruffle Co. v. Douglas [Case No. 8,948], "the single series of stitches, and the unvarying regularity of the plaits or gathers, thus dispensing with the gathering thread, avoiding the injurious process of whipping or scratching the fabric with a sharp needle, and the perforations in the ruffled piece which the needle and thread make in gathering." The defendants' ruffle is a plaited strip, combined with a band, a single row of stitches performing the office of securing the gathers, and uniting the gathered cloth to the band, but it has, in addition, a second row of stitches in the band, not securing the band to the gathered cloth. The ruffle can be cut in two, between the two rows of stiches. One part would be a ruffle, and the other a strip of stitched cloth. The Magic ruffle of the plaintiffs is an unfinished article, to be attached by the band to ladies' or children's undergarments. The Princess ruffle is a finished arti-

cle, having a band with an even and finished edge, and is designed to be worn as a neck ruffle. Still, the distinguishing characteristic of the Magic ruffle is found in the Princess ruffle, which contains the row of stitches performing the double office of confining the gathers and attaching the ruffled cloth to the band; and, although the Princess ruffle has a second series of stitches, and is a completed article, different in appearance, and used for a different purpose, from the Magic ruffle, yet, in its patentable characteristics, it contains the single feature which had been previously patented by the plaintiffs' grantor. It has other and additional features which render it a different article from the Magic ruffle in the eye of the trade and of the purchaser, but these additional features do not vary the one peculiarity in which it resembles the Magic ruffle. If that peculiarity is a patentable one, it follows that the defendants' ruffle is an infringement of the plaintiffs' patent.

An attempt was made to claim that the Princess ruffle was a double ruffle, and so within the license to the defendants, but it is obvious that, if the Princess ruffle is divided, the narrow strip which remains after the ruffle proper has been cut off, is a useless strip of stitched cloth, and is not, in any proper sense of the word, a ruffle.

The answer further alleges, that, after the execution of the agreement, the defendants discovered the existence of letters patent to Isaac M. Singer, dated on or about March 18th, 1856, and that the complainants, believing that this invention substantially contained that described in patent 28,244, desired to join with the defendant in purchasing the same; that it was purchased by both parties about April 2d, 1863, and, since that time, the complainants have made no attempt to enforce their patent, but have regarded the same as substantially inoperative and worthless; and that, by reason of said Singer patent, the patent numbered 28,244 is void. Whether the Singer patent does or does not anticipate the patent of the complainants is not material, inasmuch as the validity of the latter patent is not here in issue. This part of the answer is material only upon the question of the laches of the complainants in the vindication of their alleged rights. The only evidence in regard to the reasons for the purchase of Mr. Singer's patent, or the opinions of the complainants in regard to the effect of the Singer invention upon the validity of their own patent, is contained in the testimony of the defendants' treasurer, who says, that "the defendants discovered the existence of the Singer patent, and, thinking that, if left in the hands of other parties, it might possibly be used for purposes of litigation and annoyance, causing expense and trouble, they thought best to secure it, and the Magic Ruffle Company, regarding it in anticipation of their patent, wished to unite with us in securing it, and, as that would save one-half

of the expense, and, as we thought, answer our purpose, we consented to do so, and it was bought jointly by them and the defendants." This does not maintain the position of the defendants, that the agreement in regard to the manufacture of ruffles other than the double ruffle was substantially abandoned in consequence of the purchase of the Singer patent. This purchase seems to have had no material influence upon the relations of the parties, or upon this agreement.

The most important point of the defendants is, that they have been manufacturing the Princess ruffle ever since the date of the agreement, with the knowledge and acquiescence of the complainants, and were not notified that such manufacture and sale were regarded by the complainants as a violation of the agreement, or of the patent, until after it had expired, and about the time of the commencement of this suit, and that this claim, if it ever had any validity, had become stale, and should not be favored by courts of equity, by reason of the laches of the complainants in the vindication of their rights, and their acquiescence in the assertion of adverse rights. If I was satisfied, from the evidence, that the defendants had manufactured and sold the Princess ruffle since 1862, in such quantities that the attention of the plaintiffs must have been early called to the infringement, or that they actually knew of the violation of the agreement ever since the year 1862, I should be of opinion that their delay in making known their claims was such as to prevent them from now receiving the aid of a court of equity to the extent of its powers. The testimony of the treasurer of the defendant corporation upon this part of the case is guarded, as will be seen by the following quotation: "Question. Subsequent to the date of that agreement, and up to the time of the commencement of this suit, have the defendants manufactured and sold ruffles like exhibit Barney, No. 3? Answer. Yes; more or less. Question. Has the same been sold in New York. If so, name a few of the houses to whom it has been sold? Answer. Yes; Calhoun & Robbins, J. B. Spelman & Son, L. H. Mandelbaum & Co., and a number of others, whom I could not positively swear to know by name. Question. It has been in the market to a considerable extent, has it not, and under what name? Answer. It has, under the name of Princess." The testimony in the case, as it now stands, does not show that the Princess ruffle has been in the market to any large extent, and that the complainants must necessarily have known that the defendants were manufacturing and selling this ruffle, and thus show that the complainants were negligent in the enforcement of their rights, or were wilfully permitting the defendants to continue the manufacture, under the supposition that their conduct was not open to criticism.

As I have said, I am not now called upon to decide as to the measure of damages. The only decree which can now be made is, to order an accounting and a disclosure, and a reference to a master to ascertain the number of yards of Princess ruffle which have been manufactured and sold, and the amount of such sales during each year, and to ascertain the profits which have accrued to the defendants from such manufacture, for the purpose of ascertaining the amount of the complainants' damages. Other questions in regard to damages will be determined upon the hearing after the accounting shall have taken place.

Let a decree be entered for a reference and an account.

[For the hearing on exceptions to the master's report and for a final decree, see Case No. 8,950. [For another case involving this patent, see Magic Ruffle Co. v. Douglas, Case No. 8,948.]