### MUDGETT et al. *v.* THOMAS et al.

#### (Circuit Court, S. D. Ohio, W. D. April 28, 1893.)

#### No. 4,421.

**PATENTS—REPUDIATION OF LICENSE—ESTOPPEL TO DENY VALIDITY OF PATENT.**
If the exclusive licensee, under a license which contains no recitals as to the validity of the patent, repudiates and abandons the license, he is not estopped from setting up the invalidity of the patent, for lack of invention and want of novelty, as a defense to an action for royalties alleged to have become payable subsequent to the repudiation.

At Law. Action by Mudgett & Mudgett against Thomas & Sons and the Thomas Manufacturing Company for royalties under an exclusive license to manufacture under letters patent. Motion to strike out certain defenses. Denied.

Gunckel & Rowe and Parkinson & Parkinson, for complainants. Bowman & Bowman, for defendants.

SAGE, District Judge. This is an action at law to recover royalties under an exclusive license issued by the plaintiffs to the defendants Thomas & Sons for the manufacture of hay tedders under a patent granted December 18, 1877, to John Mudgett,—one of the plaintiffs. The defendants filed separate answers. In the fifth and sixth defenses, which are substantially the same in both answers, they incorporate, by reference, the second defense, to wit, that the defendants Thomas & Sons executed the license dated January 10, 1882, which purported to grant them the exclusive right to make and sell hay tedders under the plaintiffs' patent, for the royalty set forth in the petition, and that by the terms of the license such tedders were to be sold under the name, "The Mudgett Tedder." That said contract did not oblige them to make or sell said tedders, but, on the contrary, provided that plaintiffs could terminate the contract whenever defendants failed to manufacture and sell sufficient to supply a reasonable demand therefor. Said defenses also incorporated, by reference, the averments of the fourth defense: That, prior to the season and year of 1885, said Thomas & Sons notified the plaintiffs that they could no longer manufacture under said license, on account of defects in the pretended patented improvement therein described, the close competition with other tedders, on which no royalty was payable, and the heavy royalties stipulated, and that they abandoned said contract of license, and would no longer manufacture under it. That plaintiffs acquiesced in such abandonment, entered into a new contract with the defendants John H. Thomas & Sons, whereby they undertook to grant them the right to manufacture under a later patent held by them, at the royalty of one dollar per tedder; settled with said Thomas & Sons on November 26, 1885, for 100 tedders sold by them under the latter contract, as in full of their account for royalties to that date; and never—then or at any other time—demanded of any of the defendants any account of or royalties on the tedders for which royalty is now sought to be recovered until about October 18, 1889, although they knew that Thomas & Sons, from 1884 to July 29, 1886, and thereafter the defendant the Thomas Manufacturing Company, were making and selling the same.

It is further averred, by adoption from the fourth defense, that Thomas & Sons, during the season of 1884, sold certain tedders under the name "Thomas Tedder" at the same time that they sold said Mudgett tedders under the name "Mudgett Tedder," as plaintiffs at the time well knew, which Thomas tedders were made in strict accordance with the terms of certain letters patent granted John H. Thomas, and sold under the protection of such patent, and that all tedders made or sold by any of the defendants, excepting those for which Thomas & Sons paid royalty to the plaintiffs, were said Thomas tedders, placed on the market under that name, and made and sold under the protection of the John H. Thomas patents, as the plaintiffs at all times well knew. That on September 14, 1889, the plaintiffs notified the defendants, in accordance with the terms of said license, that they terminated the said license of January 10, 1882. The fifth defense also avers that the plaintiffs' .

patent is void for lack of invention; and the sixth, that it is void for want of novelty.

The plaintiffs move to strike out these defenses as incompetent, irrelevant, and impertinent. The license contains no statement, by way of recital or otherwise, touching the validity of plaintiffs' patent; and under the averments of the answer it must be taken to be true, in considering the motion, that the defendants Thomas & Sons notified the plaintiffs, prior to the season and year of 1885, that they would no longer manufacture under the license, for reasons above stated, and that they abandoned the contract with plaintiff's acquiescence. It must further be taken to be true that the new contract under a later patent was completed by a full settlement on the 25th of November, 1885, and from that time until the 18th of October, 1889, almost four years, although the plaintiffs knew that the defendants were manufacturing and selling tedders under their own patent, and under the name of "Thomas Tedder," they never made any demand for royalties, or claimed that said tedders were made or sold under the contract. And, lastly, it must be taken to be true that on the 14th of September, 1889, the plaintiffs themselves notified the defendants that they terminated said contract. In this state of the pleading, the fifth defense (that the plaintiff's patent is void for lack of invention) and the sixth defense (that it is void for want of novelty) must be recognized as valid defenses. The authorities cited by counsel for plaintiffs in support of the motion are not in point. Wilder v. Adams, 2 Woodb. & M. 329; Sargent v. Larned, 2 Curt. 340; and Marsh v. Dodge, 6 Thomp. & C. 568,—are cited for the rule that in an action of covenant, to recover the royalty for machines actually sold thereunder, the covenantor cannot set up the defense of the invalidity of the patent. The distinction is that in this case the machines were not sold under the license, but after the license had been abandoned by the defendants. For the same reason, Gaylord v. Case, 1 Cin. Law Bul. 382; Magic Ruffle Co. v. Elm City Co., 13 Blatchf. 151; Birdsall v. Perego, 5 Blatchf. 251; and Marsh v. Dodge, supra,—are inapplicable; for they hold that if the licensee avail himself of the invention, so as to earn the royalty, without offering to surrender his license, he is estopped to impeach the validity of the patent. In this case the defendants not only offered to surrender, but did actually abandon, the license. It was held as long ago as Hayne v. Maltby, 3 Term R. 438, that the doctrine of estoppel is not applicable where the license does not, by stipulation or recital, affirm the validity of the patent. In that case the plaintiffs, pretending to derive a right under a patent, assigned to the defendant the right to use the patented machines on certain terms, to which he agreed. There was no statement in the license that the patent was valid. Lord Kenyon said that the plaintiffs, pretending to derive a right under a patent, assigned to the defendant part of that right on certain terms, and, notwithstanding the facts disclosed at the trial showed that they had no such privilege, still insisted that the defendant should be bound by his covenant, although the consideration for it was fraudulent and void.

He said, further, that the doctrine of estoppel was not applicable, and that the person supposed to be estopped was the very person who had been cheated and imposed upon, and that the case did not resemble the case of landlord and tenant; for the tenant is not, at all events, estopped to deny the landlord's title. The estoppel only exists during the continuance of his occupation, and if he be ousted by title paramount he may plead it. In the same case, Ashhurst, J., in his concurring opinion, said that a void patent was a fraud on all mankind. The true rule is stated in Marston v. Swett, 82 N. Y. 526, 533, 534,—that if the patent is apparently valid, and in force, the party using it, and receiving the benefits of its supposed validity, is liable for royalties agreed to be paid, and cannot set up as a defense its actual invalidity, for the reason that he has got what he bargained for; that he cannot be allowed at the same time to affirm and disaffirm the patent, nor can he in this way force the patentee into a defense of his right, and compel him to try it in a collateral action. The court further said that if the manufacturer did not intend to go on under the license, but chose to make the patented article, not under the patent, but in hostility to it, he must give notice of that intention, in order that the presumption might not attach, or the patentee be misled. To the same effect is Lawes v. Purser, 6 El. & Bl. 930, and White v. Lee, 3 Fed. Rep. 224, where Lowell, J., says that if a licensee has renounced the license, he may, on the one hand, defend against the agreement, and set up the invalidity of the patent, and, on the other hand, be sued as an infringer. In Brown v. Lapham, 27 Fed. Rep. 77, Wheeler, J., says that when a licensee stands out from under the license, and claims nothing from it, with full knowledge by the licensor of his position, he would appear to be at as full liberty to contest the patent as any one. See, also, Sherman v. Transportation Co., 31 Vt. 162, where defendant had taken a license to use three machines made under a certain patent by plaintiff. Two of these machines were made by plaintiff, and delivered by him to defendant, under the contract of license. The defendant did not receive the third machine from the plaintiff, but made it for itself under the contract. After paying the license fees for some years, it notified the plaintiff that it repudiated the license, and would no longer pay royalty, and continued the use of the three machines. To an action for license fees, the defendant pleaded the repudiation of the contract, and the invalidity of the patent. As to the two machines which had been made by the plaintiff, and delivered to defendant, under the contract of license, the court held that the defendant was estopped, by retaining them, to plead the invalidity of the patent as a defense, and that it should have redelivered them to the plaintiff, in order to put itself at liberty to dispute the plaintiff's patent. As to the third machine, however, which was not delivered to the defendant by the plaintiff, the court held that the repudiation of the license was all the defendant could possibly do to put the plaintiff in the position he occupied before the making of the license, and, as to the royalties sought to be recovered on that machine, that the invalidity

of plaintiff's patent was a perfect defense. It would be against public policy to extend the doctrine of estoppel beyond the strict letter of the rule, for in Manufacturing Co. v. Gormully, 144 U. S. 234, 12 Sup. Ct. Rep. 632, Justice Brown says: "It is as important to the public that competition be not repressed by a worthless patent, as that the patentee of a really valuable invention should be protected in his monopoly." Of course it will be understood that the defenses involving the validity of the patent will be available only for the period subsequent to the abandonment of the license by the defendants, and notice thereof to the plaintiffs.

The motion will be overruled.