[Civ. No. 6214. Second Appellate District, Division One.—May 15, 1929.]

THE ARMSTRONG COMPANY (a Corporation), Appellant, v. SHELL COMPANY OF CALIFORNIA (a Corporation), Respondent.

Bauer, Wright & Macdonald, Alexander Macdonald, Lyon & Lyon and Frederick S. Lyon for Appellant.

McCutchen, Olney, Mannon & Greene for Respondent.

McLUCAS, J., *pro tem.*—Plaintiff entered into a contract with Western Union Oil Company on September 19, 1919, wherein plaintiff, as owner of a certain patented process known as the Armstrong Process, for the extraction and manufacture of high-grade gasoline from natural and casing-head gas, licensed Western Union Oil Company to use said Armstrong Process on certain premises leased by Western Union Oil Company in a plant or plants to be constructed and equipped on said leased premises and to treat therein natural gas or casing-head gas produced from the lands covered by said lease, or from lands adjoining thereto. Western Union Oil Company agreed to pay the entire cost of all labor and materials required in the construction and equipment of said plant, which was to be constructed under the supervision of the plaintiff in accordance with plans and specifications theretofore approved by Western Union Oil Company. The contract further provided as follows: "The party of the second part further agrees to pay to the party of the first part, at the offices of said first party in the city of Los Angeles, California, on the 10th day of each and every month from and after the commencement of the production of gasoline at said plant, and thereafter during the life of this agreement, for the right to use said Armstrong Process, a royalty of five per cent (5%) of the net amount of money received by the party of the second part during the preceding month from the sale of gasoline produced at said plant, which net amount shall be ascertained after deducting the cost of production, including the amount

of any royalties due to the lessors of said Western Union lease. It is mutually understood and agreed that the term for which said royalties shall be paid shall be ten (10) years from and after the date of the actual commencement of the production of gasoline at said plant; provided, however, that should the aggregate amount of royalties paid to the party of the first part prior to the expiration of said term equal the sum of one hundred thousand ($100,000) dollars, then the obligation to pay royalties shall cease and terminate; and provided further, that the party of the second part may at any time terminate its obligation to pay any further royalties by giving written notice to the party of the first part of its intention so to do and by paying to said party of the first part the difference between the aggregate amount of royalties already paid and the sum of one hundred thousand ($100,000) dollars. It being understood and agreed that when royalties as herein provided shall have been paid for ten (10) years from and after the date of the actual commencement of the production of gasoline at said plant, or if prior to the expiration of said ten (10) years, the party of the second part shall have paid to the party of the first part the sum of one hundred thousand ($100,000) dollars, as herein provided, it shall have the right to continue to use said Armstrong Process in the manner herein provided, without the payment of any further royalties or sums whatsoever.'' Plaintiff further guaranteed that it had the sole and exclusive right to license for use in the state of California the said Armstrong Process, and plaintiff agreed to defend at its own cost and expense any suit, claim or demand of any person based on the use of said process, and to indemnify Western Union Oil Company for any judgment rendered against it on account thereof. The contract further provided: ''It is further mutually understood and agreed that the license hereby granted to the party of the second part to use said Armstrong Process is unlimited as to time, but that the same confers no rights upon said second party to authorize or license other persons, firms or corporations to use the same without the written permission of the party of the first part. This agreement shall extend to and be binding upon the successors, assigns, heirs and representatives of the parties hereto during the full time this agreement may remain in force.''

The gasoline plant was completed and operated by Western Union Oil Company until on or about January 1, 1922, when defendant succeeded to all the right, title and interest of Western Union Oil Company under said agreement and defendant took over said plant and operated the same up to about April 19, 1923. On said day defendant notified plaintiff in writing that it renounced and terminated said agreement and repudiated the license purported to be given thereby, in words as follows: "As you know, we have succeeded to all right, title or interest of Western Union Oil Company under said agreement. Please be advised that we hereby renounce and terminate said agreement; that we hereby repudiate the license purported to be given by said agreement to said Western Union Oil Company; that we hereby abandon any position as licensee under said agreement; that we hereby renounce any protection of said license; that we hereby refuse to make any further payments as royalty or otherwise for said license or under said agreement. We do this for the reason that the letters patent upon which you relied for your authority to grant said license are invalid and void. Please be further advised that we have completed and entirely abandoned the operation of the gasoline extraction plant erected pursuant to said agreement on the lands covered by the lease referred to in the said agreement; that from the date hereof we will not operate said plant, or any gasoline extraction plant, on the lands covered by the said lease pursuant to or in accordance with the terms of said agreement; that we declare that we are freed and discharged from any liability or obligation of making further payments as royalty or otherwise for said license or under said agreement." The plant has not been operated since April 19, 1923. It was stipulated that the total payments made to plaintiff by defendant and defendant's assignor pursuant to said contract amounted to $20,-840.88. Action was brought by plaintiff to recover the sum of $80,671.49, together with interest thereon from April 19, 1923, on an alleged difference between the sum of $100,000 mentioned in the contract and the amount of money paid to plaintiff as royalty under said contract. Judgment was rendered for the defendant and plaintiff appeals from the judgment.

 Appellant's first contention is that by refusing to pay further royalties to the plaintiff, defendant became liable under the contract to pay plaintiff the difference between the aggregate of sums already paid and $100,000, and that the trial court erred in finding to the contrary. It is argued that the cause of action arose out of a contract between the parties; that the contract imposed a direct and unqualified obligation to pay royalties for ten years and then provides an exclusive method by which the licensee may terminate its obligation in this behalf. Analyzing the contract, we find that the instrument contains no mention of the aggregate amount of royalties payable to plaintiff, except in paragraph 2. In the first sentence of this paragraph Western Unión Oil Company is required to pay to plaintiff on the tenth day of each month after the commencement of production of gasoline, and "thereafter during the life of this agreement, for the right to use said Armstrong Process, a royalty of five per cent of the net amount of money received by the party of the second part during the preceding month from the sale of gasoline produced at said plant." The only obligation to pay royalties imposed upon the licensee in the foregoing sentence is to pay royalties "from the sale of gasoline produced at said plant" by the use of said Armstrong Process. If no gasoline was produced by the use of said process, then no royalties were payable. The obligation to pay royalties has been fully performed by the payment of royalties during all of the time when the process was used and the plant remained in operation. While it may be inferred from the terms of the contract that it undoubtedly was the intention of the parties that Western Union Oil Company should produce gasoline by the use of said process in a plant to be erected on its lands, yet we have searched the contract in vain for any direct provision requiring Western Union Oil Company to produce any gasoline whatsoever by the use of said process. The contract merely requires Western Union Oil Company, under the supervision of the plaintiff, to erect and equip at its own cost and expense a gasoline extraction plant, and further licenses Western Union Oil Company "to use said Armstrong Process in a plant or plants to be constructed and equipped on said Western Union lease, and to treat therein any natural gas or casing-head gas it may now or

hereafter own or become entitled to," produced from certain lands. Under the contract the licensee had the right, but was not under the obligation, of paying a total amount of $100,000 at any time during the life of the contract. Had defendant done so, there would have been no further obligation to pay royalties, even though it continued to use the process. Appellant assumes that the contract imposes an obligation on the licensee to pay royalties for ten years, and then points out that the contract provides the method by which the licensee may terminate its obligation in this behalf, namely, either by the payment of an aggregate amount of royalties in the sum of $100,000 prior to the expiration of said ten-year term, or during said term, by the licensee giving written notice of its intention to terminate its obligation to pay further royalties and paying to the licensor the difference between the aggregate amount of royalties already paid and the sum of $100,000. But, as we have already seen, there is no obligation to pay further royalties to be found in the contract. Appellant is mistaken in its premise. The premise being false, the conclusion must be false. There being no such obligation, it follows that there is none to be terminated, and there is no difference to be paid by the defendant.

Appellant argues that, since defendant gave notice to plaintiff refusing "to make any further payment as royalty or otherwise for said license or under said agreement," and declaring that it is "freed and discharged from any liability or obligation to make further payments as royalty or otherwise," it is tantamount to an admission that if it had not been for the alleged invalidity of the patent it would not have been freed and discharged from such liability. We do not find in this notice any admission of an obligation to pay further royalties; nor do we find that the fact that defendant stated that it was refusing "further payments as royalty or otherwise, . . . for the reason that the letters patent upon which you relied for your authority to grant such license are invalid and void," prevented the defendant from availing itself of the contract and assignment defenses after litigation had begun. The doctrine that when a party gives a reason for his conduct and decision touching anything involved in a controversy he cannot, after litigation has begun, change his ground and put his

conduct upon another and different consideration, is inapplicable in the instant case. This doctrine is not applicable for two reasons: In the notice of renunciation the defendant refused payment on two grounds; first, the invalidity of the patent, and, second, the abandonment of the operation of the plant or any gasoline extraction plant on account of which the defendant declared that "we are freed and discharged from any liability or obligation to make further payments as royalty or otherwise for said license or under said agreement." In our opinion, the second of these grounds permits the defendant to rely on a defense that the contract imposed no obligation to pay further royalties. It follows that if the contract imposes no obligation to pay further royalties, then defendant is not estopped to rely on a defense that the defendant never assumed any liability under said contract. But even though the contract did impose a liability to pay further royalties, we do not think the defendant is estopped by the renunciation to set up the defense that defendant never assumed any liability under said contract.

If the contract imposes no obligation to pay further royalties, then a discussion of the further defenses becomes superfluous. But as plaintiff insists that the contract does impose such obligation to pay further royalties, for the purpose of a complete consideration of the case we proceed to a discussion of the further defenses. Plaintiff contends that defendant having taken over operations under the contract and having held itself out to plaintiff as assuming the liabilities thereunder, it is liable to plaintiff and that the trial court erred in finding to the contrary. In reply thereto, defendant states that if the contract be construed as creating any obligation, defendant is not liable because it never assumed any of the obligations of the contract. The contract is by its terms made binding upon the assigns of the licensee. The mere assignment by the purchaser of its rights under an executory contract does not cast upon the assignee any of the personal liabilities imposed by the contract upon the assignor, even though the contract provides that its stipulations are to apply and bind the assigns of the respective parties, unless the assignee expressly obligates himself to perform the covenants binding upon the assignor or recognizes his personal obligation to the vendor or claims

or accepts the benefits of a full performance of the contract. (25 Cal. Jur. 701; *Lisenby* v. *Newton*, 120 Cal. 571 [65 Am. St. Rep. 203, 52 Pac. 813]; *Tarpey* v. *Curran*, 67 Cal. App. 575, 587 [228 Pac. 62]; *Barberich* v. *Pooshichian*, 59 Cal. App. 507 [211 Pac. 236]; *Robinson* v. *Rispin*, 33 Cal. App. 536 [165 Pac. 979]; *Jones* v. *Allert*, 161 Cal. 234 [118 Pac. 794]; *Drips* v. *Moore*, 179 Cal. 249 [176 Pac. 159]; *Wilson* v. *Beazley*, 186 Cal. 437 [199 Pac. 772].) In the instant case the assignee did not expressly obligate itself to perform the covenants binding upon the assignor. In order that an assignee may be held liable under a contract, there must be an express assumption. The indenture of January 2, 1922, between Western Union Oil Company and defendant, attached to the amendment to the answer as Exhibit "A," contains an agreement of assumption reading as follows: "The grantee hereby assumes, from and after the day of the delivery of this indenture, and hereby covenants and agrees to and with the grantor and Union Company, and each of them, promptly to pay and perform, when and as payment and performance may be due, subject as hereinafter provided, the following indebtedness, liabilities and obligations of the grantor, namely: (a) All the covenants, agreements and obligations, contingent or otherwise, existing under or pursuant to any of the leases or other instruments in writing respecting oil and gas properties, included in the property and assets hereby assigned, transferred and conveyed; provided that this assumption shall not become effective as to the covenants, agreements and obligations under or pursuant to any particular lease or other instrument in writing until the delivery and acceptance, pursuant to the second sentence of article III of this indenture, of an instrument specifically assigning the same; . . . " In article III of said indenture the grantor agrees to execute not later than July 1, 1922, and deliver to the grantee an instrument in form satisfactory to counsel for the grantee assigning all contracts respecting oil and gas properties. No such instrument has been introduced into the record. Defendant has in the amended answer specifically denied assuming any liability under said contract, and it would appear that such liability has never been consummated, since the terms of the proviso as hereinbefore stated are not shown to have been complied with. Furthermore, if this assump-

tion of the agreement had become effective by the delivery of the specific agrcement of assignment of the contract in suit, plaintiff could not rely upon such admission for the reason that the indenture between Western Union Oil Company and defendant was expressly not for the benefit of plaintiff. It is provided in said indenture as follows: "Nothing in this indenture, express or implied, is intended or shall be construed to confer upon, or give to, any person, firm or corporation other than the parties hereto, any right, remedy or claim, under or by reason of this indenture, or of any term, covenant or condition thereof; and all the terms, covenants, conditions, promises and agreements in this indenture contained shall be for the sole and exclusive benefit of the parties hereto, and their successors and assigns." The rule is well established that only an express beneficiary can recover on a contract between other parties. (Civ. Code, sec. 1559; *Chung Kee* v. *Davidson*, 73 Cal. 522 [15 Pac. 100]; *Buckley* v. *Gray*, 110 Cal. 339 [52 Am. St. Rep. 88, 31 L. R. A. 862, 42 Pac. 900]; *Wilson* v. *Shea*, 29 Cal. App. 788 [157 Pac. 543]; *Ericksen* v. *Rhee*, 181 Cal. 562 [185 Pac. 847].) Nor has the defendant recognized a personal obligation to the vendor to pay further royalties. The only obligation recognized by the defendant was the obligation to pay accruing royalties so long as the process was used by the defendant, which obligation has been fully met. Nor has defendant claimed or accepted the benefits of a full performance of the contract; in fact, the defendant by its notice of renunciation has waived full performance and released plaintiff therefrom. Plaintiff contends that defendant held itself out to plaintiff as assuming the liabilities under the contract in question by taking over operations and making payments of accruing royalties in accordance with the terms of the agreement. We are not able to perceive in what manner defendant by such conduct held itself out to plaintiff as assuming the liability to pay anything further than royalties accruing for the use of the process. We do not believe the defendant by such conduct assumed a liability to pay further royalties for a period of ten years, or until $100,000 in royalties should have been paid, especially since its assignor was not so bound by the terms of the original contract. In support of its contention plaintiff relies upon section 1589 of the Civil Code, which provides: "A vol-

untary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.'' And upon section 3521 of the Civil Code, which provides that ''he who takes the benefit must bear the burden.'' In this case the defendant was not a party to the original transaction. The rule is well settled that section 1589 of the Civil Code applies only to a person who was a party to the original transaction. (*Stone* v. *Owens,* 105 Cal. 292 [38 Pac. 726]; *Canale* v. *Copello,* 137 Cal. 22 [69 Pac. 698]; *Beazley* v. *Embree,* 41 Cal. App. 706 [183 Pac. 298]; *Bryant* v. *Smith,* 57 Cal. App. 214 [206 Pac. 1025]; *Tarpey* v. *Curran,* 67 Cal. App. 575 [228 Pac. 62].) In *Stone* v. *Owens, supra,* the court said, at page 296 of 105 Cal. [38 Pac. 727]: ''But we think this section applies only to 'a transaction' to which the person accepting the benefit is, or purports to be, or is claimed to be, a party, but who would not have been bound by the transaction if he had not accepted the benefit thereof.''

Appellant next contends that the trial court erred in overruling plaintiff's motion to strike out all testimony, exhibits and proofs offered for the purpose of showing that plaintiff's patent was invalid. It is a well-recognized rule of law that a licensee under a patent right cannot dispute the validity of his licensor's patent. But an apparent exception to the rule of estoppel exists where the licensee repudiates the license. In Robinson on Patents, section 820, volume 2, it is said: ''A licensee, having accepted a license, and while exercising under its protection the rights therein conferred, is estopped from denying the validity of the patent in any suit in which such exercise of his license privileges is the basis of the controversy. In the absence of express provisions in the license to the contrary, however, he may repudiate the license, cease to claim its protection, and as to his future exercise of the privileges described therein defend himself upon the ground that the patent is invalid.'' In *Universal Rim Co.* v. *Scott,* 21 Fed. (2d) 346, the court said: ''A licensee under a patent, who has manufactured an article pursuant to a license agreement and has regularly paid royalties during a number of years, is thereafter estopped to set up as a defense to a demand for payment of royalties that the article as made was not within the claims of the

patents. (*Sproull* v. *Pratt & Whitney,* 97 Fed. 807; *Andrews* v. *Landers,* 72 Fed. 666.) A licensee is estopped to show the invalidity of licensed patents as a defense to an action for royalties only so long as the relation of licensor and licensee continues and the licensee uses and enjoys the benefit and protection of the patents covered by the agreement. A licensee, if evicted from the use of the patents by a judgment of a court of competent jurisdiction declaring the patents invalid, may, after giving notice to the licensor, defend against the payment of royalties subsequently accruing. A licensee, if the patents are in fact invalid, may, without waiting to be evicted, denounce and abandon the license, and after giving notice thereof to the licensor, may defend against an action to enforce the license or to recover royalties subsequently accruing, with the same freedom as may a stranger to the patent, and the licensor is remitted to his infringement suit. These principles of law, notwithstanding some respectable *dicta* to the contrary, will be found fully supported and established by the following authorities: *Holmes, Booth & Haydens* v. *McGill,* 108 Fed. 238, 244 [47 C. C. A. 296]; *Mudgett* v. *Thomas,* 55 Fed. 645, 647; *White* v. *Lee,* 14 Fed. 789; *Brown* v. *Lapham,* 27 Fed. 77; *Macon Knitting Co.* v. *Leicester,* 65 N. J. Eq. 138 [55 Atl. 401]; *Harlow* v. *Putnam,* 124 Mass. 553; *Ross* v. *Dowden,* 147 Iowa, 180 [123 N. W. 182]; *Edison Elec. Co.* v. *Thackara Mfg. Co.,* 167 Pa. 530 [31 Atl. 856]; *Skinner* v. *Wood Mowing Mach. Co.,* 140 N. Y. 217 [37 Am. St. Rep. 540, 35 N. E. 491]; *K-W Ignition Co.* v. *Unit Coil Co.,* 93 Ohio St. 128, 137 [112 N. E. 199]. The contention is made, and some support therefor may be found in the books, that a licensee cannot, in the absence of a provision permitting the license to be terminated, contest the validity of patents covered by the agreement, even after renunciation and notice. This contention originates in the common-law doctrine of estoppel by covenant. It requires to support it, first, a special admission of fact, namely, that the patent is valid, or, that the licensor is the first and true inventor of the invention covered by the patent; and, second, a deed or covenant under seal which, at common law, barred a party thereto from disputing the truth of an admitted fact. It is doubtful if this rule ever had any application in equity, which, from early days, gave relief against deeds or agreements under seal

in certain situations; but, be that as it may, the true rule, in my opinion, now is that the licensee, whenever he ascertains that the patents covered by the license agreement are invalid, may refuse to be further bound thereby, and, upon repudiation and notice, may thereafter defend against an action for royalties or an infringement suit as freely as may a stranger. This is particularly true in a case like the present, where the license agreement contains no recital or clause admitting the validity of the patents and no stipulation not to dispute or contest the validity thereof. If the patents are in fact invalid, then there is no continuing consideration for the agreement, and, as was said by Mr. Justice Brown in *Pope Mfg. Co.* v. *Gormully,* 144 U. S. 234 [36 L. Ed. 414, 12 Sup. Ct. Rep. 636, see, also, Rose's U. S. Notes] : 'It is as important to the public that competition should not be repressed by worthless patents, as that the patentee of a really valuable invention should be protected in his monopoly.' So long, however, as the invalidity of a patent has not been judicially declared and the licensee continues to operate thereunder without repudiation or notice such as will place him in the attitude of an infringer, there is no such want or complete failure of consideration as will permit the licensee to refuse to pay royalties which have been previously earned.''

It should be noted that the contract in suit does not contain any recital or clause admitting the validity of the patent, nor any stipulation not to contest the validity thereof; but, on the contrary, contains a guaranty of the validity by the plaintiff. That a licensee who has renounced the license may defend on the ground of invalidity of the patent is recognized in the following cases: *Brown* v. *Lapham,* 27 Fed. 77; *Mudgett* v. *Thomas,* 55 Fed. 645, 647; *Martin* v. *New Trinidad Lake Asphalt Co.,* 255 Fed. 93, 94; *Schutte & Koerting Co.* v. *Wheeler Condenser & E. Co.,* 295 Fed. 158, 162. In *Martin* v. *New Trinidad Lake Asphalt Co., supra,* the court said: ''A licensee under a license agreement, such as that upon which this suit is based, when sued for royalties payable under the agreement, where the patent which is the subject-matter of the license, is apparently valid and in force (where it has not been declared invalid by a court of competent jurisdiction or revoked by the Patent Office before the royalties have accrued), may not set up the

supposed invalidity of the patent and the consequent failure of consideration of the agreement, unless, prior to the period for which the royalties are sought to be recovered, he has given to the licensor a distinct, definite and unequivocal notice to the effect that he no longer recognizes the binding force of the agreement, and that he will thereafter manufacture or use the article covered by the patent under a claim of right, founded upon the alleged invalidity of the patent, and in hostility to and defiance of the authority of the patent and the license, so that the licensor can thereafter proceed against him for an infringement of the patent, if he choose so to do. (*Lawes* v. *Purser,* 6 El. & Bl. 930; *Martin* v. *New Trinidad Lake Asphalt Co., Ltd.,* 182 App. Div. 719 [170 N. Y. Supp. 234] ; *Skinner* v. *Walter A. Wood Mowing & Reaping Mach. Co.,* 140 N. Y. 217 [37 Am. St. Rep. 540, 35 N. E. 491] ; *Hyatt* v. *Dale Tile Mfg. Co.,* 106 N. Y. 651 [12 N. E. 705], quoted in full in *Dale Tile Mfg. Co.* v. *Hyatt,* 125 U. S., at p. 49 [31 L. Ed. 683, 8 Sup. Ct. Rep. 756, see, also, Rose's U. S. Notes] ; *Marston* v. *Swett,* 82 N. Y. 526; *Skidmore* v. *Fahys Watch-Case Co.,* 28 App. Div. 94 [50 N. Y. Supp. 1016] ; *White* v. *Lee,* 3 Fed. 222; *Brown* v. *Lapham,* 27 Fed. 79 ; *Mudgett* v. *Thomas,* 55 Fed. 645, 648; *Holmes et al.* v. *McGill,* 108 Fed. 238, 244 [47 C. C. A. 296] ; *Macon Knitting Co.* v. *Leicester Mills Co.,* 65 N. J. Eq. 139, 152 [55 Atl. 401].) '' We see no merit in plaintiff's contention that defendant cannot avail itself of the renunciation exception to the general rule of estoppel because defendant has not notified plaintiff that it would manufacture in hostility to or in defiance of the authority of the patent and license so that the licensor could thereafter proceed against it for infringement of the patent. It is true that many cases apply the renunciation exception in favor of the licensee who abandons the license and thereafter infringes the patent. Nevertheless, it is inconceivable that defendant would be liable under the contract despite the alleged invalidity of the patent solely because it discontinued the use of the process, whereas if it had continued the use of such process in defiance of the patent it could now successfully defend itself against any liability by showing the invalidity of such patent. The authorities do not permit the invalidity of a patent to be asserted as

a defense to any liability which accrued before renunciation. The alleged obligation in the present case did not accrue before the renunciation notice was given on April 19, 1923, and defendant'thereby brings itself within the exception to the rule of estoppel. In *United States* v. *Harvey Steel Co.*, 196 U. S. 310 [49 L. Ed. 492, 25 Sup. Ct. Rep. 240, see, also, Rose's U. S. Notes], cited by appellant, the liability accrued before renunciation and recovery was had for accrued, but not for unaccrued, royalties. Appellant urges that a mere licensee cannot raise the defense of invalidity, and cites authorities holding that, where the grant of an exclusive right is made, if the exclusive right fails, the consideration fails, but that where a mere license is given there is no failure of consideration until the licensee is actually prevented from using the invention. An apparent conflict of authority exists for the reason that many of the cases do not discuss the question of renunciation. In the following cases the right of a mere licensee to rely upon the defense of invalidity of the patent was recognized: *Universal Rim Co.* v. *Scott*, 21 Fed. (2d) 346 (license expressly described in the court's opinion as "non-exclusive"); *White* v. *Lee*, 3 Fed. 222; *Brown* v. *Lapham*, 27 Fed. 77; *Crossley* v. *Dixon*, 10 H. L. Cas. 293 [11 Eng. Rep. 1039]; *Lawes* v. *Purser*, 6 El. & Bl. 930 [119 Eng. Rep. 1110]; *Ross* v. *Dowden Mfg. Co.*, 147 Iowa, 180 [123 N. W. 182]; *K-W Ignition Co.* v. *Unit Coil Co.*, 93 Ohio St. 128 [112 N. E. 199]. Appellant cites authority to the effect that a licensee cannot assert invalidity of a patent unless he has been evicted. Some of the cases cited by appellant state that the licensee, in order to avoid the payment of royalties, must prove an eviction, or what is equivalent thereto, but these cases do not discuss the effect of a renunciation notice upon the payment of further royalties. In the following cases, where renunciation was held an exception to the general rule, there was neither judicial declaration of invalidity nor eviction proved: *Universal Rim Co.* v. *Scott*, 21 Fed. (2d) 346; *Brown* v. *Lapham*, 27 Fed. 77; *Mudgett* v. *Thomas*, 55 Fed. 645; *Martin* v. *New Trinidad Lake Asphalt Co.*, 255 Fed. 93; *Harlow* v. *Putnam*, 124 Mass. 553; *K-W Ignition Co.* v. *Unit Coil Co.*, *supra; Macon Knitting Co.* v. *Leicester Mills Co.*, 65 N. J. Eq. 138 [55 Atl. 401].

Appellant further claims that defendant cannot "escape its covenanted liability to pay the stipulated royalties for the use it has had of the plant and process as well as for the engineering services of plaintiff in designing and superintending the erection and construction of the plant, the production of the plans and specifications for such plant, and the performed covenant of plaintiff to protect the licensee from eviction from the use of the plant and process, or liability to any other patent owner on account of such use." In reply thereto it should be noted that under the contract Western Union Oil Company furnished the land on which the plant was built, did the necessary grading and excavating work, furnished all materials and labor, paid all the costs of labor and materials, paid the compensation of the engineer designated by plaintiff to superintend construction and became the owner of the completed plant. All that plaintiff did was to designate the engineer and furnish plans and specifications, matters which were purely and solely incidental and prerequisite to the license of the patent. If Western Union Oil Company did not receive any valid patented process, it does not matter how many plans and specifications for worthless and invalid patents it received or how many plants embodying worthless and invalid patents were designed or superintended by plaintiff. If it did not get such a valid patented process, it simply did not receive the only substantial thing for which it bargained, and there was a total failure of the only material consideration for its agreements. Furthermore, it is to be remembered that defendant never covenanted with plaintiff and never assumed the liabilities under the contract in suit. Whether there is any liability to pay further royalties by reason of the use the defendant had of the plant and process and of the performed covenant of plaintiff to protect the licensee from eviction from the use of the plant and process, or from liability to another patent owner on account of such use, is to be determined from the validity of the patent itself.

Finally, appellant contends that the evidence is insufficient to show that plaintiff's patent was invalid. No good purpose would be served by reviewing the evidence submitted on the question of the validity of the patent. Suffice it to say that, in our opinion, the evidence submitted is sufficient to support the findings of the trial court.

For the reasons stated the judgment is affirmed.

YORK, J., Concurring. — I concur in the conclusion reached by reason of the first part of said opinion wherein it states that there was no further liability under the terms of the written contract.

HOUSER, Acting P. J., Dissenting.—I dissent from the judgment.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 31, 1929, and a petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on July 11, 1929.

All the Justices present concurred.