[L. A. No. 5920. In Bank.—July 7, 1921.]

## PHILIP L. WILSON, Plaintiff, Cross-Defendant and Appellant, v. E. E. BEAZLEY, Defendant, Cross-Complainant and Respondent.

[1] VENDOR AND VENDEE—PAYMENT OF INSTALLMENTS—EXERCISE OF ELECTION — PRODUCTION OF DEED — DELAY NOT UNREASONABLE. — Under a contract of sale reserving to the vendees the right of making partial payments in any sums above the stipulated amounts on any interest bearing date, and providing that the vendor would execute and deliver a good and sufficient deed and furnish an unlimited certificate of title upon receipt of the payments as called for by the contract, a delay of five days in the production of the deed and certificate after tender of the balance of the price was not unreasonable, where the tender and demand for the deed were made two years before the maturity of the final installment, and without any previous notice to the vendor of the election of the vendees to pay such balance.

[2] ID.—DEFECTIVE TITLE—EXISTENCE OF EASEMENT—CONTINUANCE IN POSSESSION AFTER KNOWLEDGE—RESCISSION—LACK OF WAIVER.— While a vendee under a contract of sale does not waive his right to rescind the contract for defective title due to an existing easement by merely continuing in possession after knowledge of its existence, he may waive his right by the performance of acts plainly indicating that he does not contemplate its extinguishment.

[3] ID.—JOINDER IN GRANT OF SUPPLEMENTAL EASEMENT—WAIVER OF RIGHT OF RESCISSION.—A vendee under a contract of sale waives his right to rescind the contract for defective title due to an existing easement by joining in the grant of a supplemental easement to the same grantee without raising any objection to the existence of the rights acquired under the first grant.

[4] ID.—DAMAGE FROM FLOODS—ACTS OF VENDEE—LOSS OF RIGHT OF RESCISSION.—A vendee in possession cannot rescind the contract of sale on account of the washing away of a large part of the surface soil as a result of floods, where he, after going into possession, removed, despite the vendor's objection, an orchard and also scraped off and removed to adjoining property considerable surface soil.

[5] ID.—AFFIRMANCE OF CONTRACT AFTER DAMAGE BY FLOODS—TENDER AND DEMAND FOR DEED—LOSS OF RIGHT OF RESCISSION.—The right of a vendee in possession to rescind the contract of sale on account of the washing away of a large part of the surface soil as a result of floods was lost where, instead of giving prompt notice of rescission, he waited almost a year after such damage,

and then elected to pay the balance of the price and demanded a deed.

[6] ID.—ASSIGNMENT OF CONTRACT—ENFORCEMENT BY VENDOR AGAINST ASSIGNEE—LACK OF PRIVITY.—A vendor cannot enforce specific performance of an executory contract for the sale of land against the assignee of the vendee, although the vendee is in possession, or by reason of the indorsement of the acceptance of the contract on the assignment by the assignee, where such indorsement was made without consideration after the assignment was complete and the vendor and assignor had no knowledge thereof.

[7] ID.—DEPRECIATION OF PROPERTY BY ASSIGNEE OF VENDEE—LIABILITY FOR DAMAGES—CONTRACTUAL RELATIONSHIP BETWEEN VENDOR AND ASSIGNEE NOT CREATED.—Where a contract for the sale of land is executory, the performance of acts by the assignee of the vendee causing depreciation in the value of the property can have no further effect than to render him liable in an action for damages, and does not create a contractual relation between him and the vendor.

[8] ID.—VOLUNTARY ACCEPTANCE OF BENEFITS OF TRANSACTION—CONSENT TO OBLIGATIONS—INAPPLICABILITY OF CODE PROVISION.—Section 1589 of the Civil Code, providing that a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, is applicable to an assignee only when all the benefits of a full performance by the vendor have inured to the assignee.

APPEAL from a judgment of the Superior Court of Los Angeles County. Russ Avery, Judge. Affirmed and reversed.

The facts are stated in the opinion of the court.

Newlin & Ashburn for Appellant.

A. W. Rutan for Respondent.

LENNON, J.—Plaintiff and cross-defendant appeals from a judgment rendered against him upon both complaint and cross-complaint. The contract out of which the present action arose was an agreement for the sale of real property executed December 1, 1911, by defendant Beazley, as owner, and O. H. and Rachel M. Embree as purchasers. By the terms of this contract the vendees agreed to pay the sum of eight thousand dollars in one thousand dollar annual installments, with interest on deferred payments payable

annually on the first of December, and to pay all taxes
and assessments that might thereafter become due on the
premises. The right was reserved to the vendees "of mak-
ing partial payments in any sums above the stipulated
amounts before mentioned on any interest bearing date."
The vendor contracted to execute and deliver, upon receipt
of these payments as called for, a good and sufficient deed
of the premises and to furnish an unlimited certificate of
title thereto.

This contract was assigned by the Embrees to Philip L.
Wilson, plaintiff herein, by an indorsement reading as fol-
lows: "Los Angeles, November 15, 1912. We hereby trans-
fer all our right, title and interest in this contract to Philip
L. Wilson." On October 21, 1913, plaintiff Philip L. Wil-
son inserted in this assignment the words "and he agrees
to accept the same," and caused the contract and indorsed
assignment to be recorded. The assignee, Wilson, entered
into possession of the premises after the assignment and
made payments under the contract. On December 1, 1916,
at the time an installment of principal and interest became
due, plaintiff Wilson tendered defendant Beazley the full
amount of principal and interest under said contract, except
the sum of $54.55, which had been paid by defendant for
taxes, and demanded the deed and certificate of title to the
property. The tender was made about 4 o'clock in the
afternoon on a ranch some fourteen miles from the town of
Santa Ana, and defendant's papers and muniments of title
had been left in town with his attorney. Defendant tele-
phoned to the office of his attorney in Santa Ana, but
found he was out of town, and so informed plaintiff, stat-
ing that it would be necessary for defendant to go to his
attorney's office for the required papers. Plaintiff and his
attorney thereupon departed, declaring that they "could
not run all over the country." The following day, Decem-
ber 2, 1916, plaintiff served defendant with a written notice
of rescission of the contract based upon defendant's alleged
refusal to accept and comply with the conditions of the
tender of the day before. On December 6th defendant
tendered plaintiff a deed to the property and a certificate
of title, which had been brought down to date. Plaintiff
declined to accept the same and brought the present suit,
wherein he seeks the recovery of the money paid by him

under the contract, setting forth a cause of action for rescission and one based upon failure of consideration. Defendant, by cross-complaint, seeks a specific performance of the contract. The trial court decreed that plaintiff recover nothing and that defendant was entitled to the immediate payment of the total amount of the purchase price remaining unpaid, or $4,726.95, with interest.

[1] Plaintiff directs attention to the fact that the deed and certificate of title were not produced by defendant until five days after plaintiff's tender of the purchase price. It is conceded that defendant had no notice whatever that plaintiff would elect to pay the balance of the purchase price on December 1, 1916, and that defendant had reason to believe that plaintiff did not even intend to pay the installment of principal which fell due on that date. Considering all of the circumstances, it cannot be seriously claimed that defendant's offer of the deed and certificate of title on December 6, 1916, was not a sufficient compliance, in so far as the element of time is concerned, with his contractual obligation to produce a deed and certificate upon the tender of the purchase price. The final installment of the purchase price was not actually due until December, 1918, and defendant was not required to keep a deed and certificate of title in continual readiness prior to that date, in the absence of notice that plaintiff had elected to accelerate the transfer of title. Under the facts of this case an immediate readiness to perform on the part of the vendor could mean no more than an offer and readiness to perform as soon as reasonably possible after notice of plaintiff's election (*McVitty* v. *Flentge*, 34 Cal. App. 781, 784, [169 Pac. 666]), and there is every indication that there was no unreasonable delay in this respect.

In support of his action to recover the money paid under the contract, plaintiff relies primarily upon two grounds. The first is that defendant was unable to furnish a clear title to the property for the reason that the certificate of title showed the property to be subject to an existing easement. It appears that in September, 1911, prior to the execution of the contract of sale, defendant Beazley had granted to the Standard Oil Company an easement for a pipe-line and for telegraph and telephone lines on a single line of poles. Plaintiff Wilson was not informed of the ex-

istence of this easement until December 19, 1913. On the date last mentioned the plaintiff, Wilson, joined in a grant to the Standard Oil Company of an easement for a second pipe-line upon the premises, which was, to quote from the grant, "to be laid along and parallel to the pipe-line of grantee now upon said property." And it is further provided in this second grant: "The rights herein granted are supplemental and in addition to the rights granted in and by certain grant to said Standard Oil Company dated September 28, 1911, and recorded in book 4694 of deeds, at page 224, Los Angeles county records."

[2] The mere fact that the assignee, Wilson, continued in possession of the premises after receiving actual knowledge of the existence of the encumbrance created by defendant Beazley did not constitute a waiver of the right of rescission for defective title. This is so for the reason that, where the encumbrance is such that it can, in the nature of things, be removed, no right of rescission exists until the time for performance by the vendor has arrived and the latter has failed to effect the required removal. (*Latimer* v. *Capay Valley Land Co.*, 137 Cal. 286, [70 Pac. 82]; *Prentice* v. *Erskine*, 164 Cal. 446, [129 Pac. 585].) While in such a case the vendee does not waive his right to the removal of an encumbrance by merely continuing in possession after knowledge of its existence, he may, nevertheless, waive this right in other ways before the time for performance by the vendor has arrived. That is to say, he may waive the right by performing acts plainly indicating that he does not contemplate the extinguishment of a particular encumbrance. [3] This the plaintiff, Wilson, has done in the instant case by joining in the grant of the *supplemental* easement for the consideration of one hundred dollars paid to him at the time of the execution of the second grant, without raising any objection to the continued existence of the rights acquired under the first grant. Upon the facts proven the trial court was amply justified in finding: "That plaintiff, by the entering into the supplemental agreement for the additional pipe-line easement, . . . intended to and did waive any and all objections that he might otherwise have had to the original grant of easement."

[4] The second ground relied upon by plaintiff is the damage wrought by four floods, two in the year 1914 and

two in January, 1916. The testimony shows and it is found by the trial court that, as a result of the floods, a large part of the surface soil on the premises was washed away; a river which formerly did not touch the property in question established a new course through the same, and the premises depreciated in value but were not completely destroyed. On the other hand, it was found by the court that when plaintiff went into possession of the property he removed therefrom, despite defendant's objection, an apple orchard which produced a crop worth over one thousand dollars a year, and that he also scraped off and removed to adjoining property considerable surface soil. The court found, and the evidence shows, these acts of the plaintiff reduced the land in value from eight thousand dollars to four thousand dollars. It is apparent that plaintiff by his own acts placed himself in a position where he was unable to restore to defendant that which he had received under the contract. Furthermore, assuming for the purpose of discussion, and without deciding, that the alleged injuries to the land in suit caused by the floods constituted a cause for rescission, nevertheless the duty devolved upon the plaintiff to effect a rescission, if he were entitled to the same, with promptness. (Civ. Code, sec. 1691, subd. 1.) The failure to exercise reasonable diligence in this regard, after notice of the accrual of the right, will defeat the rescission. (*Ferguson* v. *Edgar,* 178 Cal. 17, [171 Pac. 1061].) A considerable interval of time ensued between plaintiff's first knowledge of the destruction caused by the flood and his attempted rescission. [5] Moreover, plaintiff not only failed to promptly notify defendant that he declined to proceed with the purchase, but, in December, 1916, almost a year after the last flood, elected to tender the balance of the purchase price and demand a conveyance of the property at that time. When plaintiff did serve a notice of rescission on December 2, 1916, it was based solely upon defendant's alleged refusal to accept plaintiff's tender and inability to furnish a clear title to the property. Having affirmed the contract after knowledge of the damage caused by the floods, plaintiff is precluded from claiming a failure of consideration or a right of rescission because of that damage.

· [6]  This disposes of the contentions in support of plaintiff's action for the recovery of the money paid under the contract, and there remains for consideration defendant's cross-complaint for specific performance of the contract.  In this connection plaintiff and cross-defendant, Wilson, calls attention to the decision of the district court of appeal of this state in the case of *Beazley* v. *Embree,* 41 Cal. App. 706, [183 Pac. 298].  This was an action by the present defendant Beazley against the Embrees and the assignee, Wilson, upon the same contract here in controversy for the recovery of the one thousand dollar installment due December 1, 1915.  The court there held, upon appeal by the assignee, Wilson, that there was no privity between the assignee, Wilson, and Beazley and, therefore, that Beazley had no right to sue Wilson directly for moneys under the contract. Plaintiff Wilson now contends that this decision is the law of the case on this appeal.  ' (*Tally* v. *Ganahl,* 151 Cal. 418, [90 Pac. 1049].)  We need not determine whether a decision of the district court of appeal on a former appeal is the law of the case on a subsequent appeal to the supreme court irrespective of the supreme court's approval of that decision, for we are of the opinion that the decision in that case is correct and that no additional facts have been presented in the case at bar to alter the reasoning there applied.

In the case of *Lisenby* v. *Newton,* 120 Cal. 571, [65 Am. St. Rep. 203, 52 Pac. 813], it was held that the assignment of the vendee's "right, title and interest" in a contract for the sale of real property does not render the assignee personally liable to the vendor for payments thereunder, even though the assignee take possession under the contract.  In the instant case there was such an assignment.  There was no contract directly for the benefit of the vendor nor was there at any time any privity between the vendor and assignee.  The words, "and he agrees to accept the same," even if capable of interpretation as an agreement to assume personal liability to the vendor, are without such force in this case.  They were added without consideration after the assignment was complete and without the knowledge of either assignor or vendor.  The finding of the trial court that plaintiff and cross-defendant Wilson "did insert and cause the said words to be written therein for the pur-

pose of consenting to and assuming the obligations of said contract and giving notice thereof'' and that ''the said plaintiff assumed the obligations of the said Embrees under said contract'' is not supported by the evidence and, therefore, need not be further considered.

[7] The performance of acts by the assignee causing depreciation in the value of the property could have no further effect than to render him liable in an action for damages; such acts did not create a contractual relation between the assignee and vendor. Nor was a contractual relation established by the assignee's tender of the purchase price on December 1, 1916. It was held in *Lisenby* v. *Newton, supra,* that payments by the assignee of principal and interest on account of the contract price did not give rise to an implication that the assignee had assumed a personal liability to the vendor for the payment of the sums due under the contract. It was stated in that case: ''Of course, no assignee of the purchaser in an executory contract for the sale of real estate can require the vendor to convey unless the purchase money be paid, but this conditional right to a conveyance is quite a different thing from personal liability to compulsory payment at the suit of the vendor; such liability can result only from some express or implied contract of the assignee, and is not implied from the mere assignment of the original contract, although followed by possession of the land.''

[8] Section 1589 of the Civil Code, providing that a voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, does not alter the rule of the case of *Lisenby* v. *Newton, supra.* This section is applicable to an assignee only when all the benefits of a full performance by the vendor have inured to the assignee. (*Robinson* v. *Rispin,* 33 Cal. App. 536, 541, [165 Pac. 979].) It follows that the vendor Beazley cannot hold cross-defendant Wilson personally liable for performance of the contract.

The judgment upon the complaint is affirmed and the judgment upon the cross-complaint is reversed, with directions to the court below to enter upon the findings made a judgment of strict foreclosure requiring the payment within a reasonable time to be fixed by the court of the amount

found due the defendant, and directing that in default of such payment the rights of plaintff be terminated.

Wilbur, J., Sloane, J., Shaw, J., Angellotti, C. J., and Lawlor, J., concurred.