[Civ. No. 4715. First Appellate District, Division One.—June 4, 1924.]

M. F. TARPEY, Plaintiff and Appellant, v. BELLE M. CURRAN, Executrix, etc., et al., Cross-complainants and Appellants; PIEDRA MAGNESITE COMPANY (a Corporation) et al., Respondents.

[1] FINDINGS—CONFLICTING EVIDENCE.—The rule as to finality of findings based upon conflicting evidence applies in cases formerly denominated cases in equity, as in cases of law.

[2] VENDOR AND VENDEE — ASSIGNMENT OF EXECUTORY CONTRACT — ASSUMPTION OF OBLIGATIONS—DEFAULT—RECOVERY OF DEFICIENCY. As to the original vendor in an executory contract for the sale of real estate there can be no recovery of deficiency judgment or personal judgment for the purchase money, for default in the payment of the purchase price, against the assignees of the vendee without an assumption of the obligations of the contract, in either an action for specific performance or for foreclosure of the so-called vendor's lien.

[3] ID.—FORECLOSURE OF LIEN—DEFICIENCY JUDGMENT.—In such an action, where the assignee of the vendee under an executory contract for the sale of real property does not assume the obligations of the contract, the utmost relief to which the vendor is entitled is a strict foreclosure of his vendor's lien on the property, and any personal judgment for deficiency must be against the original vendee; and this is true where the assignee has acted under the contract of sale to the extent of making payments thereunder, and even where, after assignment, he has taken possession of the property and wasted it.

[4] ID.— ERECTION OF PLANT — TERMS OF CONTRACT — FORECLOSURE — CONFLICTING EVIDENCE—FINDINGS.—In this action against the vendees under an executory contract for the sale of certain mining claims and against their assignees for a balance due under the contract, and for the foreclosure of a vendor's lien on said claims, the trial court having found, upon conflicting evidence, that the assignees did not assume the obligations of the contract, although they entered into possession of the property and made certain payments under the contract, and that the calcining plant erected by the assignees was not erected pursuant to the terms of the contract of sale, which called for the erection of such a plant by the vendees, but was erected by the assignees for the purpose of doing

1.  See 2 Cal. Jur. 921; 2 R. C. L. 204.
2.  See 27 R. C. L. 567.

a general calcining business, including the ore from the mines in question as well as any other property, such findings were conclusive upon appeal; and the vendor was not entitled to have such calcining plant included in the decree of sale.

[5] ID.—UNSUPPORTED PERSONAL JUDGMENT—APPEAL—MODIFICATION.— In such an action, where neither the evidence nor the findings support a personal judgment in favor of the plaintiff and against one of the defendants (who advanced part of the moneys, and had an interest in, but did not sign the contract of sale) and, on appeal, the appellants ask that the judgment be set aside as to said defendants, and respondents say they are not concerned about the matter, the appellate court will direct the trial court to modify the judgment by striking out those portions thereof which authorize any personal judgment against said defendant.

---

(1) 4 **C. J.**, p. 900, sec. 2870.    (2) 39 **Cyc.**, p. 1671.    (3) 39 **Cyc.**, p. 1671.    (4) 4 **C. J.**, p. 900, sec. 2870; 39 **Cyc.**, p. 1877 (Anno.). (5) 4 **C. J.**, p. 1155, sec. 3164.

APPEAL from a judgment of the Superior Court of Fresno County and from an order denying a new trial. D. A. Cashin, Judge. Modified and affirmed.

The facts are stated in the opinion of the court.

James Gallagher for Plaintiff and Appellant.

L. L. Cory for Cross-complainants and Appellants.

Frank D. Stringham and Beverly L. Hodghead for Respondents.

ST. SURE, J.—This is an action to recover $33,617.20, balance due on a last installment of $37,500 under agreement to purchase certain magnesite mining claims, to which plaintiff as vendor and defendants Curran and Phillips as vendees were the original parties, and for the foreclosure of a vendor's lien on said mining claims.

Defendants Thomas, Winter, Piedra Magnesite Company and American Refractories Company are joined as claimants of interests in the mining property and a calcining plant, as purchasers, grantees, assignees, mortgagees and judgment creditors.

---

5.   See 2 **Cal. Jur.** 984; 2 **R. C. L.** 277.

The third amended complaint alleges that defendants Winter, Refractories Company and Thomas, with full knowledge of the mutual rights and obligations of the original parties to the contract, and while the same was wholly executory, promoted and incorporated the defendant Piedra Magnesite Company for the purpose of assuming said contract and performing its terms, and became stockholders of said company; that said company, with knowledge of the rights and obligations of the parties to the contract, took and accepted an assignment of said contract, and agreeably to plaintiff assumed its obligations, entered upon the property and proceeded to the keeping and performance of the conditions and covenants of the contract; that it erected the plant mentioned, and otherwise performed under the terms of the contract and made installment payments thereunder with the exception of the payment sued on.

Defendants Phillips, Thomas and Belle M. Curran as executrix of her husband testator, denied generally the allegations of the complaint with respect to themselves, and cross-complained against the remaining defendants, alleging the execution of the original agreement; also execution of an agreement between themselves and Winter and the Refractories Company to form a corporation for the purpose of assuming, as assignee, the burdens of the original agreement, and holding them harmless thereunder, for the consideration of fifty per cent of the stock of said corporation and the assignment of said contract. The third amended complaint of the plaintiff is made part of the cross-complaint and the prayer is that as to any deficiency judgment that may be entered, the remaining defendants be adjudged primarily liable and these defendants (Thomas, Curran and Phillips) sureties.

Defendants Winter, the Refractories Company and the Piedra Magnesite Company answered separately the third amended complaint and the cross-complaint, after demurrers interposed thereto had been overruled. Trial was had, resulting in judgment for plaintiff, foreclosing any rights of all the defendants in the real property the subject of the original contract; and against defendants Curran, Phillips and Thomas for the amount sued for; for a sale of the property mentioned in the contract and for a deficiency judgment; denying judgment against defendants Piedra Mag-

67 Cal. App.—37

nesite Company, American Refractories Company and Emil Winter, both for deficiency judgment as to them on the original action, and a declaration of their status as principal debtors with Curran, Thomas and Phillips as sureties, on the cross-complaint of the latter.

Motion for new trial by plaintiff and cross-complainants on the grounds of the insufficiency of the evidence to support the findings, and that the decision was against law, is deemed denied by failure of action thereon within the statutory period. This is a joint appeal by plaintiff and cross-complainants from that part of the judgment adjudging that no deficiency judgment be entered or docketed against defendants Piedra Magnesite Company, American Refractories Company and Emil Winter; and that cross-complainants take nothing by their cross-complaint against said defendants. Defendant and cross-complainant Thomas appeals from the whole of the judgment against himself.

The record shows that on June 1, 1917, a contract of sale was entered into between plaintiff Tarpey as vendor and defendants Curran and Phillips as vendees for certain magnesite mining claims in Fresno County, California, for the purchase price of $75,000, of which amount $2,500 was to be paid in cash and the balance in installments. A further consideration expressed in the contract was that within 120 days from its date the vendees, at their own cost and expense, should erect a calcining plant, crusher, works, machinery and appliances on the right of way of the Atchison, Topeka and Santa Fe Railway Company's railroad, or otherwise in the vicinity of the said claims, and expend thereon a sum not less than $35,000 within said period, which plant was to be appurtenant to said mining claims and stand as additional security for the performance of the contract. A proviso that the vendees should, on demand, execute a mortgage on this plant to the vendor was included in the contract. The cash payment was made, and for the balance of the purchase price the vendees gave their promissory notes, due at the respective due dates of the payments to be made under the contract. Default in the payment of the last installment under the contract is the basis of this action. Defendant Thomas, though not a party to the contract, became jointly interested with the vendees by advancing one-third of the initial payment of $2,500 and en-

tering into a separate agreement whereby they were to share equally under whatever arrangement was made for financing and operating the property. Thomas then was, and since April 25, 1916, had been, the representative in Tulare County, California, of the American Refractories Company to buy magnesite.

Shortly after the making of the Tarpey contract the vendees, together with Thomas, went east for the purpose of interviewing officers of the American Refractories Company with a view to the financing of the Tarpey property by the latter company. Mr. Curran took with him maps, photographs and a report prepared by engineer Coghlan on the property, together with a copy of the Tarpey contract. At Chicago and Joliet they met Messrs. Mossman and Allen, respectively manager and vice-president of the American Refractories Company, and had conversation with them respecting the business in hand. From Chicago the vendees, Thomas, and Mossman, at the suggestion and on the arrangement made by the last named, proceeded to Pittsburg to confer with Mr. Winter, the president of the Refractories Company. At Pittsburg a meeting was held at which Curran, Phillips, Thomas, Mossman and Winter were present, and after discussion an agreement drawn which was then signed by all those named there present, and a few days later by Mr. Allen at Joliet or Chicago. This instrument, called the Pittsburg agreement, was dated June 9, 1917, and dealt with the formation of a California corporation "for the purpose of mining, calcining and shipping magnesite," to have five directors, three of whom (Allen, Mossman and Winter) "will represent the American Refractories Company," and Curran and Thomas "are to represent the California stockholders." The stock of the corporation, of the value of $10,000, was to be divided equally between Curran, Thomas and Phillips as one party and the American Refractories Company. This agreement recited that "Messrs. Curran, Thomas and Phillips have secured an option to purchase a certain magnesite property located at Piedra, Fresno County, Cal., . . . and they have made a payment of $2500 on the purchase price of the property. In consideration of receiving fifty per cent of the corporation stock they are to assign this contract to purchase to the new corporation with all its rights, titles and privileges. . . . The $2500 cash they

have paid and the contract to purchase shall be in full payment of their subscription of $5000. The American Refractories Company, by its three stockholders named above agree to pay $5000 in cash for the $5000 stock they are to receive.'' Provisions were made for advances of cash as a loan to the corporation by Allen, Mossman and Winter on behalf of the American Refractories Company to the extent of $50,000 for building purposes and machinery; the name of the company agreed upon, that the entire production of the new company was to be sold to the American Refractories Company, Curran named as vice-president and general manager, with his salary for the first year; and Phillips as general superintendent and his salary for the first year; counsel to be retained specified; the amount for which contracts might legally be made by the California representatives without the consent of a majority of the directors, limited; and, finally, a statement made that the corporation was to be organized on the strength of representations made by Messrs. Curran, Thomas and Phillips as to deposit and quantity and quality of same, and as to their ability to have the plant built and in operation within sixty days. This last condition was stated to be satisfied if the plant was built and in operation within three months, on account of recognized abnormal conditions prevailing. There is a conflict in the evidence as to whether or not there was a copy of the Tarpey contract at the Pittsburg meeting.

Returning from Pittsburg to California, defendant Thomas caused the incorporation of the Piedra Magnesite Company, as provided in the Pittsburg agreement, retaining attorney Powers of Visalia for the legal work. After the incorporation of the company Mr. Thomas requested the same attorney to prepare an assignment by Messrs. Curran and Phillips of the Tarpey contract to the new company. This assignment, referred to as the ''first'' assignment, was executed by Messrs. Phillips and Curran some time in July, 1917, and was delivered to defendant Thomas, who was secretary and treasurer of the new company. It presumably remained in his possession with the other records of the company until they were sent to Mr. Mossman at Joliet, Illinois, some time in August or September. There is a dispute as to whether or not the assignment was actually sent with the other records or remained in Thomas' possession until

produced November 22, 1917. One provision of this assignment read: "This instrument is made and delivered by said undersigned upon the condition that said Piedra Magnesite Company shall keep and perform all the conditions of said contract to be kept and performed by said undersigned," and a copy of the Tarpey contract was annexed to and made a part of it. The assignment was at the directors' meeting of the Piedra Company on organization, but there is no evidence of any resolution of the board of directors, as such, accepting it. Plaintiff testified also that there was no notice of any assignment of the contract ever given him by the original vendees.

The company was organized under instructions from attorney Powers and the necessary organization meetings held. The original directors were Curran, Phillips, Thomas, Mitchell and Stevenson, the two last mentioned being merely accommodation resident signers to make up the necessary quota of five. A second meeting was held on July 23, 1917, but the minutes of the meeting were unsigned. Until November 22, 1917, these appear to be all the directors' meetings held. At the first stockholders' meeting Phillips was elected temporary president and Thomas temporary secretary, the articles and certificate of incorporation were read and a draft of the by-laws presented, read and adopted. At the first meeting of directors officers of the corporation were elected as follows: Phillips, president; Curran, vice-president; Thomas, secretary; Thomas, treasurer. The business ensuing consisted in following out the Pittsburg agreement by the employment of Curran as general manager at the agreed salary and of Phillips as superintendent, at the agreed salary; the method of signing checks specified and the general manager authorized to contract obligations not to exceed $5,000. These minutes were signed by the president and secretary. By the unsigned minutes of the directors' meeting of July 23d the following appears to have taken place: Joe L. Mitchell resigned as director, and Emil Winter was elected director in his place; R. D. Stevenson resigned as director, and P. B. Mossman was elected director in his stead; Phillips resigned as president, and Emil Winter was elected to that position; Thomas resigned as secretary, and Mossman was elected as such. The new lineup of directors and officers then stood: Winter, president; Mossman, secretary;

Thomas, treasurer; Curran, vice-president; Phillips, director; which, excepting that Allen was not on the directorate, for which purpose an additional meeting was deemed necessary, was the program outlined for the corporate representation in the Pittsburg agreement.

On November 22, 1917, at the instance of Mossman and under direction of attorney Hodghead, another meeting was held. "There were present Directors Thomas J. Curran, J. W. Thomas, and W. B. Phillips. There were also present former directors Joe L. Mitchell and R. D. Stevenson, two of the original incorporators of said Piedra Magnesite Company, and Directors thereof until the 23d day of July, 1917." Then follows a recital of the proceedings of substituting Winter and Mossman by election as directors and president and secretary, respectively, at the meeting of July 23d, and their refusal to accept such election. A resolution is then set forth rescinding the proceedings of the meeting of July 23d *in toto*. Mitchell and Stevenson were again elected directors, Phillips was again elected president and Thomas secretary, and after qualifying shares had been issued, the meeting continued with this personnel. A resolution was then passed reciting the advance by the American Refractories Company to Piedra Company of an aggregate of $69,000, or some $19,000 in excess of that agreed to be advanced in the Pittsburg agreement, and in consideration of assurance of the American Refractories Company, through Mossman, that it would refrain from instituting action to recover this money, or attach the property of the company therefor, the Piedra Company acknowledged its indebtedness to the American Refractories Company in the sum of $69,000, less the actual payments on account as shown by the books of account of the Piedra Company, and authorized the execution of promissory notes of the company to the American Refractories Company for the various amounts which had been advanced from time to time, to bear interest at six per cent from the respective dates of advancement. The place of business of the corporation was then moved from Porterville to San Francisco, and the notes executed and delivered to Mossman as treasurer for the American Refractories Company. Mitchell and Stevenson then resigned as directors, Phillips as president and director; Curran, as vice-president, was called to preside. Mossman and

S. H. Dolbear were elected directors to replace Mitchell and Stevenson, and F. D. Stringham to fill the vacancy as director, of Phillips. Dolbear was then elected president. The minutes were signed by Thomas as secretary, and a note, also signed by him, was added, to the effect that Mossman and Winter, though declining to admit that they were directors or officers of the company, were willing, and Mossman authorized Winter, in the latter's absence, to consent to the holding of the meeting if such consent were deemed necessary to the validity of the proceedings.

At this last meeting an assignment of the Tarpey contract, called the "second" assignment, was signed by Curran and Phillips, antedated July 30, 1917, which recited the making of the Pittsburg agreement and the formation of the Piedra Company in accordance therewith; and also in stated accordance therewith, for the expressed consideration of one dollar, assigned the Tarpey contract to the Piedra Company. The clause for assumption of liability by the company, contained in the first assignment, was omitted from this instrument. Phillips testified that he protested executing this second assignment, saying that he had already signed the necessary instrument following the incorporation of the company, but that it was represented to him that the first assignment was lost and this was merely to replace it and complete the records. Mossman testified that they never consented to such an assignment as the "first," and that he had no knowledge of such an instrument until the meeting of November 22d. Winter testified he had no personal knowledge of the "first" assignment. There was also executed at this time by Curran and Phillips a release of the Piedra Company, the American Refractories Company and the stockholders of the latter, of all liability incurred or to be incurred by reason of the assignment of the Tarpey contract to the Piedra Company. The expressed consideration for this release is the advancement to Phillips and Curran of the sum of seventeen thousand dollars, or thereabouts, "being such sum as is necessary to make the payment due under said Tarpey contract on the 30th of November, 1917, if the same be paid."

The Piedra Company continued to operate the claims until May, 1918, but abandoned them before the final payment under the Tarpey contract matured on May 31, 1918,

and with the exception of the application of a small royalty of two dollars per ton for what had been mined during this period, the last payment was never met.

The findings of the court pertinent to this appeal are substantially as follows:

(III)   That on June 1, 1917, the Tarpey contract was fairly entered into for an adequate consideration, between Tarpey, Curran and Phillips.

(IV) That Thomas did not sign the contract and was not obligated to plaintiff thereunder.

(V) That while the Tarpey contract was executory and nothing done thereunder save the initial payment of $2,500 by the original vendees, the Pittsburg agreement was made by the American Refractories Company by and through its representatives, Emil Winter, P. B. Mossman and E. M. Allen, with defendants Curran, Phillips and Thomas.

(VI) That the Magnesite Company was incorporated "pursuant to the terms of" the Pittsburg agreement; that Curran and Phillips assigned to said corporation all their right, title and interest in and to the Tarpey contract; and further, that the "first" assignment was executed in July, 1917, by Curran and Phillips, and delivered to Thomas, but never accepted by Piedra Magnesite Company nor any other defendant; that no officer of the Magnesite Company was authorized to assume the indebtedness under said Tarpey contract for the Piedra Company, and the Piedra Company never assumed said indebtedness. Further, that the "second" assignment was executed November 22, 1917, by Curran and Phillips, delivered to the board of directors of the Piedra Company on the same day, and accepted by the Piedra Magnesite Company.

(VII) That in July, 1917, while the Tarpey contract was wholly executory, the Piedra Company entered into and took possession of the Tarpey contract property, and mined and extracted ore therefrom. That thereafter they advanced to Curran and Phillips and caused to be made on the Tarpey contract the following payments: $15,000 on or before June 30, 1917; $20,000 on or before November 30, 1917; and an aggregate of $6,062.63 as royalty on ore extracted payable to plaintiff under the terms of the Tarpey contract.

(VIII) That on November 22, 1917, for the consideration named therein, Curran and Phillips executed the "release"

of that date (the consideration expressed being the advancement of the amount necessary to meet the payment of November 30), and that on November 30 the Piedra Company advanced to Curran and Phillips the sum of $17,000 to meet the November 30 payment, and the payment was made by the latter to the plaintiff Tarpey.

(XI) That the amount sued for, with interest, is due and owing plaintiff by Curran, Phillips and Thomas; that the Piedra Magnesite Company, American Refractories Company and Emil Winter did not assume any of the obligations of Curran or Phillips under the Tarpey contract or the payment of the purchase price thereunder, and that the Piedra Company, American Refractories Company and Winter are not liable to plaintiff nor to the cross-complainants in any amount whatever.

(XII) That within three months from the Pittsburg agreement the Piedra Company constructed a calcining plant on the property of the Atchison, Topeka and Santa Fe Railway Company at Piedra; that it was not constructed as appurtenant to or as part of the Tarpey property, but for the purpose of reducing magnesite ore received from the property of plaintiff or from any other source.

The appeal, as was the motion for a new trial, is grounded on the insufficiency of the evidence to justify the findings, and that the decision is against law.

It is also urged that the entire judgment against Thomas has no support in the evidence or findings; that the decision in favor of Piedra Magnesite Company, American Refractories Company and Winter is wholly unsupported by the evidence, as is also the decision that cross-complainants are entitled to no relief against their codefendants.

In appellants' closing brief the points on which the correctness of the decision is questioned are thus set forth:

(1) In denying a deficiency judgment to plaintiff against the Piedra Company with a consequent stockholder's liability against the Refractories Company and its stockholder Winter.

(2) In denying cross-complainants relief against respondents.

(3) In finding that the calcining plant erected was not so erected as appurtenant to the Tarpey claims, and additional security for the Tarpey contract.

(4) In awarding judgment against defendant Thomas.

Appellants and respondents agree that the Pittsburg agreement constitutes the measure by which the rights and liabilities of the various parties are to be established. Introductory to their main contention appellants argue that the Piedra Magnesite Company was created a *de facto* corporation, and an equitable assignment of the Tarpey contract with all its rights, titles and privileges, presently made to it by the original vendees, in accordance with the terms of the Pittsburg agreement; and that the determination of the character of that assignment as imposing or withholding the assumption of the burden of the Tarpey contract, is a matter of law to be determined by the court from the agreement itself; and that what the Piedra Company did or failed to do in formally accepting such assignment when it became a *de jure* corporation, cannot affect its liability under the Tarpey contract, nor that of the parties to the Pittsburg agreement. If this were so, the finding of the court on a conflict of evidence that the Piedra Company did not accept the "first" assignment, would become of no consequence in determining the actual liability of that company under the Tarpey contract, for the burden of liability would attach as soon as the *de jure* corporation came into existence. But it is not a question of law; it is a question of fact with which we are confronted. [1] In this connection appellants refer to the "compelling equities" in the case, but the rule as to conflict applies in cases formerly denominated cases in equity, as in cases of law. (2 Cal. Jur., Appeal and Error, sec. 546.)

Appellants' main attack is directed against findings VI, VII and VIII. Upon the sustention or reversal of these findings depends appellants' case. These findings and the allegations contained in the third amended complaint, as to the acceptance of the "first" assignment and the assumption of the obligations of the Tarpey contract, are correlative. The main question thus presented for our decision is whether or not, in case of a conflict, there is substantial evidence supporting the finding negativing assumption. With the fact of assupmption or nonassumption, and depending upon it, are inextricably interwoven the secondary propositions of the construction of finding VII (relative to advances or loans to the Piedra Company or Curran or Phillips, used in

paying installments upon the Tarpey contract); and, like-
wise, of the effect to be given finding VIII (concerning con-
sideration for the release).

[2] The law is settled that as to the original vendor in
an executory contract for the sale of real estate there can be
no recovery of deficiency judgment or personal judgment
for the purchase money, for default in the payment of the
purchase price, against the assignees of the vendee without
an assumption of the obligations of the contract, in either an
action for specific performance or for foreclosure of the
so-called vendor's lien. [3] The utmost relief to which
the vendor is entitled is a strict foreclosure of his vendor's
lien on the property. Personal judgment for deficiency must
be against the original vendee. This is based on the ground
of lack of privity of contract between the assignee and the
vendor without an assumption of the obligations of the con-
tract, and also on the ground that the assignment is in the
nature of a covenant in gross personal to the vendee and not
running with his estate in the property. (*Lisenby* v. *New-
ton,* 120 Cal. 571 [65 Am. St. Rep. 203, 52 Pac. 813], and
cases cited.) .And this is true where the assignee has acted
under the contract of sale to the extent of making payments
thereunder (*Lisenby* v. *Newton, supra*), and even where,
after assignment, he has taken possession of the property and
wasted it. (*Wilson* v. *Beazley,* 186 Cal. 437 [199 Pac. 772];
*Beazley* v. *Embree,* 41 Cal. App. 706 [183 Pac. 298].) The
seeming exceptions to the rule are exemplified in the cases of
*Jones* v. *Allert,* 161 Cal. 234 [118 Pac. 794], and *Robinson*
v. *Rispin,* 33 Cal. App. 536 [165 Pac. 979], holding in
the latter case (33 Cal. App. 541 [165 Pac. 982]), "of
course . . . the mere assignment of the rights under an execu-
tory contract would not make the assignee liable to the other
contracting party. Such was the case of *Lisenby* v. *Newton,*
120 Cal. 571 [65 Am. St. Rep. 203, 52 Pac. 813]. But
where, after the assignment is made, the executory pro-
visions of the contract are fully performed, the benefits
inuring solely to the assignee, and where by his actions he
holds himself out as personally liable and recognizes the
original contract as binding upon him, he is liable to the
other party equally with the assignor. Such is this case,
as was *Jones* v. *Allert,* 161 Cal. 234 [118 Pac. 794]."

*Jones* v. *Allert* was a case where land was purchased especially for a corporation to be formed. The corporation was later formed, recognized the contract as binding on itself and performed affirmative acts looking toward further benefit, in securing the vendor to deal directly with it.

The contract here was not expressly entered into in the first instance on behalf of a corporation to be formed, as was the case of *Jones* v. *Allert, supra,* and the trial court evidently did not believe that the acts of those interested in financing the corporation, both prior to its formation and afterwards, were consistent with the idea that they expressly, either in equity or otherwise, assumed the obligations of the Tarpey contract already entered into by Curran and Phillips. Only on such an assumption could the Piedra Company be held at suit of the vendor under the theory of *Jones* v. *Allert* or *Robinson* v. *Rispin,* or under section 1589 of the Civil Code, which has almost uniformly been restricted to parties to the contract under which relief is sought. (*Canale* v. *Copello,* 137 Cal. 22 [69 Pac. 698]; *Stone* v. *Owens,* 105 Cal. 292 [38 Pac. 726]; *Beazley* v. *Embree,* 41 Cal. App. 706, 709, 710 [183 Pac. 298]; *Wilson* v. *Beazley,* 186 Cal. 437 [199 Pac. 772].)

The trial court had all the evidence, documentary and oral, before it, on which to judge the intent of those planning the Piedra Company, and their and its acts, formal and informal, following incorporation. Entering into and a necessary part of the evidence on which its decision was based was the presumption of good faith in the proceedings attending the transactions preceding and providing for the incorporation of the Piedra Company, with the subsequent actions of it and its organizers, and the power to look through and beyond defective or lacking formalities to the real purpose and meaning of the whole plan. In a case in equity, with full power to act, the trial court found on a conflict of evidence adduced before it that the "first" assignment, with its clause of express imposition of liability, was never accepted by the Piedra Company. It also found that the Piedra Company did not assume the obligations of the Tarpey contract. As to findings VI, VII, and VIII the evidence presents a conflict. "The decision of the trial court is conclusive upon us, in so far as there is any substantial evidence tending fairly, with such inferences as may reason-

ably be drawn therefrom, to support such decision, even though we may think that a different conclusion should have been reached." (*Clopton* v. *Clopton,* 162 Cal. 27, 31 [121 Pac. 720, 721].)

What we have heretofore said concerning findings VI, VII, and VIII, and the reasons given for refusing to interfere with them, applies with equal force to finding XI.

[4] Finding XII excludes the calcining plant from the decree of foreclosure and sale. It is contended by appellant Tarpey that he is entitled to have that property included in the decree of sale. The Pittsburg agreement provides: "This corporation is to be formed for the purpose of mining, calcining and shipping magnesite and the manufacturing and sale of the same into the various products if found necessary; . . . That Curran, Thomas and Phillips have secured an option to purchase certain magnesite property from M. F. Tarpey," which they agree to assign and "also agree to assign any other property they may now have, control or can get, etc." The agreement further recites that large sums of money will be necessary for building and machinery to operate the plant, and provides for an advance for this purpose of $50,000. The Tarpey contract with Curran and Phillips provides for a plant to cost not less than $35,000. Appellant's argument is based upon the contention that it appears uncontradicted that the plant was constructed with full knowledge of the Tarpey contract and pursuant thereto. Respondents contend that this calcining plant was erected by the Piedra Company, as agreed by the parties at Pittsburg, to do a general calcining business in the Fresno district, including the ore from the Tarpey mines and from "any other property" they could secure. The finding of the court is in accord with respondents' contention. It was made upon conflicting evidence and for reasons heretofore stated will not be disturbed.

[5] The trial court found (IV) that appellant Thomas did not sign the Tarpey contract and was not obligated thereunder. And yet the trial court gave judgment against Thomas. Neither the evidence nor the findings support such judgment. Appellants ask that the judgment against Thomas be set aside, and respondents say they are not concerned about the matter. Under such circumstances we deem it advisable to direct the court below to modify the judgment.

(*Fox* v. *Hale & Norcross S. M. Co.*, 122 Cal. 219 [54 Pac. 731].)    The cause is therefore remanded to the superior court, and that court is directed to modify its judgment herein by striking out those portions thereof which authorize any judgment against J. W. Thomas.    As so modified the judgment and order are affirmed.

Tyler, P. J., and Knight, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 31, 1924.

All the Justices concurred, except Tyler, J., *pro tem.*, who did not participate.